and it obtains a frontage of 871′ on an 80′ public street including a Broadway corner. The awards made by the commissioners for the southerly half of the street amount to $3,470; the aggregate assessment against the abutting land on this side of the street is $17,210.76. Therefore the owners of the land fronting on the southerly side are assessed nearly $10,000 in excess of their awards. The real estate company is assessed $26,566.55, which is about $15,000 less than it is to be paid. The court refused to confirm, again upon the ground that it worked an injustice on the owners of the property on the north side.

We are not furnished with the reason for the action taken by the court, nor is any rule laid down. The ground may be that there is more territory in the benefited region below 218th street than there is north of it. But, on the other hand, that section had a street which gave it complete access to Broadway, although but 40′ in width, which had been dedicated by the owners and for which comparatively nothing had been awarded in this proceeding, whereas the property to the north had no street at all prior to the opening because it had no rights in the private street. The owners now have an 80′ street which greatly enhances the value of their property and for which they have been handsomely paid. It seems to us that the commissioners proceeded upon a proper theory. This being so, the court is reluctant to interfere with their actual awards.

The order should be reversed, and the report confirmed, with costs to the appellant. All concur.

(163 App. Div. 381)

### COHEN v. ATLAS ASSUR. CO. et al. (No. 5996.)

(Supreme Court, Appellate Division, First Department. July 10, 1914.)

1. INSURANCE (§ 574*)—ADJUSTMENT OF LOSS—AWARD—VALIDITY.

In a suit to set aside an award under a standard fire policy and for the recovery of the loss sustained by fire, evidence *held* not to justify a finding that the appraisal was not honestly made in good faith with sufficient thoroughness and by fair and unprejudiced appraisers.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. § 574.*]

2. INSURANCE (§ 574*)—ADJUSTMENT OF LOSS—APPRAISEMENT—QUALIFICATION OF APPRAISER.

The mere fact that an appraiser selected by fire insurance companies to act with another appraiser and an umpire to ascertain the amount of a loss had served as appraiser for fire insurance companies on prior occasions does not of itself disqualify him or make the action of the companies in selecting him a fraud on insured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432, 1434; Dec. Dig. § 574.*]

3. INSURANCE (§ 570*) — ADJUSTMENT OF LOSS — APPRAISEMENT — QUALIFICATION OF APPRAISER.

The requirement in a fire policy that appraisers shall be disinterested means that they shall be fair and unprejudiced, while it will be expected that all the facts which may be favorable to the party nominating the appraiser shall be brought out by him so that due weight may be given to them.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1426; Dec. Dig. § 570.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INSURANCE (§ 574*)—ADJUSTMENT OF LOSS—APPRAISEMENT—QUALIFICA-
TION.
 Whether an appraiser selected by a fire insurance company to adjust
with an appraiser selected by insured, and an umpire selected by the two
appraisers, were disinterested, is a question of fact.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432,
1434; Dec. Dig. § 574.*]

5. INSURANCE (§ 574*)—ADJUSTMENT OF LOSS—AWARD BY APPRAISERS.
 An award by appraisers made under a standard fire insurance policy
will not be set aside without clear proof of fraud or mistake or malfeas-
ance, and every reasonable presumption must be indulged in its favor.
 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1430–1432,
1434; Dec. Dig. § 574.*]

 Appeal from Special Term, New York County.

 Action by Julius M. Cohen against the Atlas Assurance Company
and another. From a judgment for plaintiff, defendants appeal. Re-
versed, and new trial ordered.

 Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
DOWLING, and HOTCHKISS, JJ.

 John M. Bowers, of New York City, for appellants.
 Ernest Hall, of New York City, for respondent.

 DOWLING, J. This action was brought to set aside an award made
in pursuance of the provisions of the standard fire insurance policy,
and for a recovery of the amount of the damage claimed to have been
sustained by the plaintiff by reason of a fire occurring in his cigar
factory on May 18, 1909.

 After the fire, in order to determine the amount of plaintiff's dam-
age, an amicable settlement not having been arrived at, an appraisal
agreement was made on May 28, 1909, under which Bernard Rosen-
bluth was named as appraiser by the plaintiff and Simon Ruppin by
defendant. These appraisers undertook to determine the sound value
and damage to the stock in accordance with the policies of insurance,
and finally agreed upon John H. Duys as umpire; he having been
suggested by the plaintiff's appraiser. Mr. Duys was thereupon duly
appointed as umpire by a written instrument dated June 16, 1909. On
June 21st the appraisers commenced the work of determining the
sound value and damage done to plaintiff's property. They received
schedules based on plaintiff's inventory of his stock, with appropriate
columns to note the result of their labors. Being unable to agree, the
umpire was called upon to perform his functions. The number of
hours which he spent with the appraisers in the work of examination
and appraising is given by the different witnesses as from 5¼ to 3½
hours. During this time the appraisers and the umpire examined the
stock of tobacco and cigars in the plaintiff's place of business. There
were over 800,000 cigars therein, inclosed in ordinary boxes ready for
sale, of which 550,000 were stored in a storeroom, or so-called humi-
dor, and the balance were outside in the packing room. There were al-
so some unpacked cigars included in the total number. The work of
examining the tobacco occupied until about 5 o'clock; the remaining

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

two hours being devoted almost entirely to the examination of the cigars and the reaching of a conclusion. It is admitted by the plaintiff's appraiser that every lot appearing in the schedules obtained from the plaintiff had been examined when the work was completed. The real controversy herein arises solely from the damage to the cigars, for the trial court has found that the sound value of the property was properly determined, it being in fact the value placed upon it by the plaintiff himself; nor has the trial court interfered with the damage determined to have been done to the tobacco, save to reduce the amount of damage awarded to plaintiff by the sum of $920.40, that being the amount of an error due to the computation of the damage based on market weight instead of actual weight.

The sole ground of attack upon the conclusions reached under the appraisal is the amount awarded for the damage done to the cigars. This was fixed at $7,723.19, being 35 per cent. of the sound value which has been increased by the trial court to $15,446.39, or 70 per cent. of the sound value. It is quite apparent that the mere failure of the trial court to coincide with the view taken by the appraiser and umpire who signed the award as to the amount of the damage done would not be ground for setting aside the award; but the court has acted upon the theory that the amount of time devoted to the apraisement of the cigars was insufficient, so that the work was superficially done. It has found that the examination of the tobacco was fairly thorough, and did not interfere with the conclusions reached upon that phase of the matter. It seems to us upon this record that what was done was sufficient to enable the appraisers and umpire to reach a fair conclusion as to the damage done the cigar stock. The question was one of smoke damage; that is, the extent to which the cigars had been impaired, if at all, by the presence and penetration of smoke during and after the fire, so that the cigars were impregnated with its odor, and thus their marketability affected or destroyed.

The cigars in question for the greater part retailed at five cents and were of the brand established by plaintiff known as "Keystone." The appraisers and umpire first examined the cigars outside the humidor, a considerable part of which were in cases lined with zinc, provided with locks and nearly air-tight. Packages of these were taken from different places and brought to the front of the building. The plaintiff's appraiser says that a half dozen cases were opened and ten or twelve boxes of cigars taken therefrom, and the appraisers, after examination, having disagreed as to the damages, the umpire determined the same. Before this was done, cigars were taken out of these boxes, the labels were examined, and the cigars were smoked; 80 or 100 in all being examined and many of them smoked. As to the cigars in the humidors, boxes were selected by the two appraisers at random, and the foreman for the plaintiff was directed to bring out the worst damaged boxes, which he did, and all the boxes thus selected were brought to the front of the loft where the light was best and there examined. The boxes were opened, the labels examined, and the cigars smoked. The smoking was done by all three of the parties, and sometimes as many as five or six cigars were being consecutively smoked

by the umpire with the particular purpose of detecting, if possible, any smoke damage, which both the defendant's appraiser and the umpire were unable to find. However, 10 per cent. was allowed on the humidor stock to cover repacking where the labels had been affected, although the contents were not. Finally, the umpire took away several boxes with him and smoked them away from the factory, still finding no evidence of smoke damage apparent to the taste or smell, but as the result of averaging and calculation an allowance was finally made to the plaintiff of 35 per cent. for whatever damage was done the stock of cigars.

Of course, all that was necessary for the appraisers and umpire to do was to determine the damage done these cigars, for their quantity was not in dispute; the plaintiff and his employés having spent some four days preparing the schedules of the entire stock which were accepted by the appraisers without question. The plaintiff's appraiser estimated the damage to these cigars at 80 per cent., and does not deny that he made a sufficient examination at the time upon which to base that estimate of damage. With similar opportunities for examination the other appraiser and the umpire agreed upon a damage figure of 35 per cent. The plaintiff himself claims that the cigars had been so affected by smoke that they were no longer marketable as Keystone cigars. Neither he nor any one else suggests a method of testing the smoke damage save by smelling and smoking, which was done by the appraisers and umpire. The plaintiff has produced expert witnesses to testify that the cigars were damaged to a great extent by the smoke, and the only method followed by them was that pursued by the appraisers and umpire, namely, to select boxes of cigars at random, to smoke cigars taken therefrom and to ascertain whether or not they were affected by the smoke. None of these experts undertook to fix the exact percentage of damage which had been done by the smoke, but all agreed that they were no longer merchantable as branded "Keystone" cigars. The plaintiff estimated the damage on the cigars at 85 per cent. No one has sworn that the damage was 70 per cent., the amount allowed by the trial court, emphasizing the fact that such damage is purely a matter of opinion, for the court itself felt called upon to award a percentage which is not sustained by the direct testimony of any witness produced. It does not appear that any of the expert witnesses whom the plaintiff produced spent any more time upon their examination of the cigars than did the umpire, and it is apparent that whether or not the cigars were damaged by smoke could soon be determined by comparatively a few tests made from cigars contained in the humidor and from those which were in the zinc-lined containers, for the smoke pervaded the whole building, and, if smoke damage was really caused, it could be speedily detected, and its effects must have been general.

[1] We find nothing in the record which justifies any inference or finding that the appraisal was not honestly made in good faith, and, under the circumstances, with sufficient thoroughness, and by following the ordinary and only tests that could be applied.

[2] Objection is made that the appointment of the appraiser by the defendant was unfair and fraudulent because Ruppin had acted a

half dozen times as appraiser on fire losses, once for an owner and on the other occasions for insurance companies, including some of the defendants in this case. While the fact that Ruppin had served as appraiser for fire insurance companies on prior occasions would have a bearing upon his disinterestedness, that fact is not sufficient in itself to disqualify him or to make the action of the defendants in selecting him a fraud upon the plaintiff.

[3] In Bradshaw v. Agricultural Insurance Co., 137 N. Y. 137, 32 N. E. 1055, the requirement that the appraiser shall be disinterested is treated as a requirement that he shall be fair and unprejudiced, and in that connection it was said by the court:

"It is proper and to be expected that all the facts which may be favorable to the party nominating him shall be brought out by the appraiser, so that due weight may be given to them; but the appraiser is in no sense for the purpose of an appraisal the agent of the party appointing or nominating him, and he remains at all times under the duty to be fair and unprejudiced, or in the language of the policy, disinterested."

In the case at bar it appears that both appraisers had positive views upon the question of smoke damage after their examination, and that was the reason why the umpire was required to be called in; but there was nothing to show or suggest that either of the appraisers was not acting in good faith and in pursuance of what he believed to be the facts in the case as he found them. Their difference may well have been an honest difference of opinion.

[4] The question of whether either appraiser was actually disinterested is a question of fact, and there is no reason to find that either in this case was not disinterested. Objection is also made to the umpire, and it is claimed that he was caused by outside considerations to reach the conclusion that he did, to plaintiff's detriment. We can find nothing which justifies such a conclusion, nor anything which impeaches his good faith in the transaction.

[5] Awards made under the provisions of fire insurance policies should not be set aside without clear and convincing proof of fraud or mistake or malfeasance, and every reasonable presumption should be indulged in favor thereof. Nichols v. Rensselaer Mutual Ins. Co., 22 Wend. 125; Barnard v. Lancashire Insurance Co., 101 Fed. 36, 41 C. C. A. 170.

We think that the finding that the award of the appraisers and umpire was irregular, fraudulent, void, illegal, and of no force and effect, and that plaintiff is entitled to judgment setting aside such award, is without foundation. We also think that the findings that Ruppin was not disinterested, but unfair or prejudiced, and that Duys was open to the same objection, are without proof to support them. Upon this record we believe the plaintiff was not entitled to judgment in his favor. It may be, however, that he can offer further testimony to substantiate his contentions.

The judgment appealed from will therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.