Mario Pittoni, J.
This is a motion by the petitioner to confirm an arbitration award in his favor made on June 27, 1958, and filed in the office of the Nassau County Clerk on July 8, 1958.
It appears that the petitioner had been engaged in the practice of orthopedic surgery in the Village of Rockville Centre, New York, and the respondent had not previously practiced in Nassau County, when on July 15, 1947, they entered into a written partnership agreement for the practice of orthopedic surgery in Rockville Centre. The pertinent provision of the agreement stated that ‘ Upon the dissolution of the partnership ” the respondent would not practice orthopedic surgery within a radius of three miles of their office for a period of one year after the termination of their partnership, unless the partnership was terminated by the petitioner without “ good cause ’ ’. In that event this provision was to be of no force and effect. The agreement also provided for arbitration by three persons of the rights, duties or obligations of the partners resulting from any disagreement during the existence of and after the dissolution of the partnership; ‘ ‘ and the award or *490 decision made by the * * arbitrators shall be conclusive as to the parties to this agreement
On August 9, 1957, the petitioner, by notice in writing, gave notice of termination of the partnership as of December 15, 1957, and demanded that the differences which existed between them be submitted to arbitrators as provided in the agreement. The respondent designated Dr. Maurice J. Langsam as his arbitrator and the petitioner designated Dr. Joseph P. Stivelman as his arbitrator. When these two arbitrators could not agree on the third arbitrator, Mr. Justice Hill appointed George V. Fleckenstein, Esq., as the third arbitrator. Subsequently, Dr. Langsam resigned and Mr. Justice Pette appointed Austin G. Oocuzza, Esq., in his place.
Thereafter, arbitration hearings were held pursuant to the agreement and a subsequent stipulation which stated as follows:
“Did Dr. Sherry’s refusal to consent to the request of Dr. Linwood to the hiring of another physician to aid the parties in their practice conducted pursuant to their agreement constitute good cause for Dr. Linwood’s termination of the partnership and, if it did, the rights of the parties under the agreement?
“ It is further stipulated and agreed that it is the intention of both sides that the evidence under the issue shall be limited to the testimony of Dr. Linwood, in his behalf, and Dr. Sherry, in his behalf, and the said testimony shall be confined to the question of hiring the third doctor and the surrounding circumstances and an alleged incident that occurred on August 9, 1957.”
Two of the arbitrators joined in an award in which they held, among other things:
“ 1. That the respondent’s refusal to consent to the request of the petitioner to the hiring of another physician to aid the parties in their practice conducted pursuant to their agreement of July 15, 1947, constituted good cause for petitioner’s termination of the partnership.
“ 2. That the conduct of the respondent in permitting an attorney to prepare what purported to be the original report of respondent as to his findings with respect to the condition of a patient, by adding headaches, nausea and cerebral concussion, not mentioned by respondent in his original report, was not only unethical but constituted, in itself, good cause for the termination of the agreement by petitioner. * * *
‘ ‘ 4. That respondent be and is hereby restrained from engaging in the practice of orthopedic surgery within a radius of three miles of petitioner’s office for the period of one year after the order of the Supreme Court confirming this award. * * *
*491 “ 6. We award our decision in favor of Dr. Linwood, the petitioner. ’ ’
The respondent opposes the confirmation of the award and by separate motion he moves to vacate it.
“ These parties by agreement selected arbitration as the method by which [the] dispute between them would be determined. The award in the forum of their choice is final and conclusive and a court may not disturb it except on the grounds of one of the statutory provisions. Absent such exception, the award may not be disturbed for error either of fact or law not evident upon the face of the award * * * Judicial review of an award is more limited than judicial review of a trial”. (Matter of Weiner Co. [Freund Co.], 2 A D 2d 341, 342-343, affd. 3 N Y 2d 806.)
The court has examined the papers submitted and finds no basis for an order vacating the award on any of the grounds specified in section 1462 of the Civil Practice Act, or for a modification of the award on the grounds stated in section 1462-a of the act.
It is fundamental that an award may not be vacated because the arbitrators did not give their reasons for the award; reasons need not be stated; nor may the court consider the evidence referred to by the dissenting arbitrator in his report (Matter of Weiner Co. [Freund Co.], supra, p. 342).
The contention that there was misconduct on the part of the arbitrators warranting the setting aside of the award is without sufficient foundation. It is not established that the arbitrators demanded, without right, their fees before the award was filed. In fact the weight of the evidence is to the contrary.
The further contention that the majority arbitrators exceeded their powers is also without sufficient foundation. First, the parties stipulated just prior to the arbitration for such matters to be arbitrated. They were bound by their own stipulation and agreement; and the arbitrators were bound to consider the stipulated issue. Second, an arbitration award may order injunctive relief (Matter of Ruppert [Egelhofer], 3 N Y 2d 576, 581).
The interpretation of the restrictive covenant by the arbitrators is correct. Anyway, interpretation was within their province.
To hold as the respondent contends would make the provision as to when the restrictive covenant begins meaningless and innocuous. In this case to hold that the one year’s restriction began on December 15,1957, the day that the petitioner declared *492 it ended, would be to make the provision unenforcible. Such a provision as we have here means that the year began then, if the partnership had ended on that date without litigation or without further proceeding, upon acceptance by the respondent of the petitioner’s declaration and the terms of the agreement. But by the prolonged arbitration and legal proceedings the respondent has carried this whole matter this far and could carry it beyond December 15, 1958, the whole year, without the restrictive covenant being enforced against him at all. Furthermore, the arbitration award that holds the termination of the partnership justified does not become effective until it is confirmed by the Supreme Court. In the meantime, all matters, by necessity, must be held in abeyance, including the enforcement of the restrictive covenant.
Be that as it may, paragraph 13 of the agreement permits any question, disagreement or difference between the parties, and the meaning or interpretation of the agreement, or the rights, duties or obligations to be submitted to arbitration. The restrictive covenant, in the light of the circumstances of this case, is not so clear as to need no interpretation. The arbitrators interpreted the restrictive covenant as being ‘ ‘ for the period of one year after the order of the Supreme Court confirming this award.” This was a reasonable interpretation; and they had the power to interpret (Matter of Dembitzer [Gutchen], 3 A D 2d 211, affd. 3 N Y 2d 851).
Other contentions do not require discussion.
The motion to confirm the arbitration award is granted.
Settle order on notice.