In the Matter of the Arbitration between ANTHONY T. COLLETTI, Appellant, and EMANUEL MESH et al., Respondents.

First Department, May 27, 1965.

*Edward C. Wallace* of counsel (*Robert Abelow* and *Marshall C. Berger* with him on the brief; *Weil, Gotshal & Manges,* attorneys), for appellant.

*Joseph J. Cella, Jr.,* for respondents.

*Per Curiam.* Disputes arose among the five shareholders of a close corporation, Colonial Farms, Inc. (Colonial), which operated a milk processing company in Maspeth, Queens, New York. Of those five shareholders all but Mr. Schwartz were interested in milk distributing companies which were customers of Colonial. Essentially, the main point of controversy among the five stockholders concerned charges that the four stockholders who had interests in milk distributing companies were giving preferential treatment and prices to their respective companies to the detriment of Colonial. At the time arbitration was demanded under the stockholders' agreement Mr. Schwartz and petitioner Colletti were aligned on one side while respondents, Emanuel Mesh, Joseph Mesh and Louis Rosasco, were on the other. As a result of this internal friction, there arose increasing difficulty in the proper operation of Colonial.

The stockholders' agreement contained a broad arbitration clause reading as follows: "Should at any time any dispute arise between any one or more of the parties hereto with respect to his or their rights, obligations, duties, and requirements under and by virtue of the provisions of this agreement, shall be referred to, and consent and approval of each of the parties hereto is expressly given to refer said dispute for determination to the American Arbitration Association, whose determination and/or decision shall be final and binding upon the parties hereto, and there shall be no appeal from said decision."

It was pursuant to that clause that the respondents, the Meshes and Rosasco, finally demanded arbitration to resolve the deadlock in Colonial. Schwartz and petitioner, Colletti, submitted a counterclaim. In the demand for arbitration by respondents, they asked that "A figure be established, fair and equitable to all, at which either group can buy or sell their stock and property interest as they choose". Petitioner-appellant did not object to that demand.

The arbitrators heard evidence on the charges and counter charges of the respective stockholders. In an award — to which

one of the arbitrators dissented — that the arbitrators stated was " in full settlement of all claims and counterclaims submitted to arbitration herein ", it was determined that Schwartz should have the option to purchase the stock of the Meshes and Rosasco at $700 per share and, should Schwartz not exercise the option, Rosasco shall purchase Colletti's stock at $700 per share and so much of Schwartz' stock as Rosasco may desire at $1,400 per share. Finally, should Rosasco fail to purchase Schwartz' stock, the Meshes jointly or severally shall purchase all or the balance of Schwartz' stock at $1,400 per share.

Petitioner attacked the award at Special Term on the ground that the arbitrators had exceeded their powers. In our opinion, the award was properly confirmed.

It is contended that the award does not determine the controversies submitted regarding the management of the corporation. On its face, the award specifically states that it was " in full settlement of all claims and counterclaims submitted to arbitration ". There is no showing that the arbitrators did not go into all of the matters which were submitted. It was unnecessary for the arbitrators in their award specifically to mention the particular issues they had decided. They were not required to set forth their findings.

In *Matter of Bay Ridge Med. Group* v. *Health Ins. Plan of Greater N. Y.* (22 A D 2d 807, 808) the court said: " The validity of an award is unaffected by the absence of a recital of the reasons for the award (*Matter of Willow Fabrics* [*Carolina Frgt. Carriers Corp.*], 20 A D 2d 864); and an award may not be vacated because the arbitrators did not give their reasons for the award nor set forth their calculations to justify the award (*Matter of Linwood* [*Sherry*], 16 Misc 2d 488, 491, affd. 7 A D 2d 757; *Matter of Weiner Co.* [*Freund Co.*], *supra*; *Matter of Big-W Corp.* [*Horowitz*], 24 Misc 2d 145, 156, affd. 14 A D 2d 817). ' Inquisition of an arbitrator for the purpose of determining the processes by which he arrives at an award, finds no sanction in law ' (*Matter of Weiner Co.* [*Freund Co.*], 2 A D 2d 341, 342, *supra*)."

Nor should the award be disturbed because the arbitrators arrived at a different figure for Schwartz' stock than for the stock of the other shareholders. Appellants argue that the arbitrators imperfectly executed their powers and that no final and definite award was made. In particular, it is claimed that the arbitration demand called for the arbitrators establishing one figure for the stock — which would be fair and equitable to all shareholders — and that the arbitrators, in arriving at two figures instead of one figure, imperfectly executed their power.

We do not read the arbitration demand in so restrictive a fashion. The demand is that " A figure be established, fair and equitable to all, at which either group can buy or sell their stock and property interest, as they choose ". Under such a demand the arbitrators had a broad discretion to resolve the issues before them. Whatever ambiguity there may be in this portion of the demand was for the arbitrators to resolve. An arbitration award is not reviewable by a court for errors of law or fact. (*Matter of S & W Foods* [*Office Employees Int. Union*], 8 A D 2d 130, affd. 7 N Y 2d 1018; *Matter of Weiner Co.* [*Freund Co.*], 2 A D 2d 341, affd. 3 N Y 2d 806.)

Neither is the conclusion reached by the arbitrators herein a " perverse misconstruction " (see *Matter of Wilkins,* 169 N. Y. 494) nor an " irrational " one (see *Matter of National Cash Register Co.* [*Wilson*], 8 N Y 2d 377, 383). In point of fact, the fixing of a different price at which the stockholder Schwartz would be required to sell his interest from that of the other shareholders was a plausible recognition of Schwartz' position, vis-a-vis the other stockholders. Schwartz was the only one of the stockholders who did not own or control a business which was a customer of the corporation. On the other hand, the remaining stockholders had gained certain financial advantages by virtue of their joint ownership of both Colonial and their own distributing companies. In any event, the question of whether the arbitrators were wrong or right in their conclusion is not one for the courts. Certainly, the award was final and the arbitrators did not imperfectly execute their powers in making the determination assailed by appellant.

We do not consider — since it was not raised — the interesting question as to whether the clause in the arbitration provision, that there shall be no appeal from the decision of the arbitrators, foreclosed petitioner's attack on the award in the courts in the absence of a claim of partiality, fraud, corruption or misconduct of the arbitrators. (See Sturgis, Commercial Arbitration and Awards, p. 798.)

The judgment should, therefore, be affirmed, with costs and disbursements to respondents.

EAGER, J. (dissenting). I would reverse and vacate the judgment entered upon the award and remand the issues for determination before new arbitrators. The arbitrators have " so imperfectly executed " their powers " that a final and definite award upon the subject matter submitted was not made ". (See CPLR 7511, subd. [b], par. 1, cl. [iii].)

" The arbitrator's award must be a complete determination of the issues presented." (*Matter of Ritchie Bldg. Co.* [*Rosenthal*], 9 A D 2d 880; see, also, *Matter of Schwartz Silk Co.* [*Granowitz*], 224 App. Div. 705.) Furthermore, it is clear that arbitrators are bound by the clear and unambiguous terms of the submission and may not dispose of the controversies submitted to them by disregarding them and rendering an award which is neither authorized by the terms nor by the contract of the parties.

The agreement between the parties, as stockholders of a closely held corporation, provided that no action should be taken by them or the directors except upon a unanimous vote and it contained a broad arbitration clause for reference to arbitration of " any dispute  *  *  *  between any one or more of the parties hereto with respect to his or their rights, obligations, duties and requirements under and by virtue of the provisions of this agreement ". The demand for arbitration, served by a majority group of stockholders upon a minority group, demanded the arbitration of disputes concerning management, and no one questions but that the disputes sought to be arbitrated were within the scope of the arbitration clause. The relief sought was " [t]o compel the said minority to act in conformity with the plans and suggestions of the majority " in certain detailed respects, including " (2) A figure be established, fair and equitable to all, at which either group can buy or sell their stock and property interest, as they choose." The minority group served a counterdemand or counterclaim for arbitration, listing several matters in dispute with respect to the management of the corporation and requested certain relief.

The arbitrators' award, however, except for the fixing of the rental to be paid by a certain tenant of the corporation, does not on its face purport to determine any of the controversies submitted in management matters. Instead, without any provision in the contract for a compulsory sale of the stock or the real property interests of a stockholder within his lifetime, and beyond the scope of the submission, the award in effect provides for certain stock options, including a provision whereby one of the majority group of stockholders shall purchase the stock of the petitioner, Colletti, one of the minority stockholders.

Furthermore, the parties proceeded to arbitrate the disputes with respect to management within the framework of a demand for arbitration which stated that the arbitrators could establish " [a] figure  *  *  *  fair and equitable to all, at which either group can buy or sell their stock and property interest, as they choose." Not only does the award fail to fix a figure purporting

to be " fair and equitable to all, at which either group can buy or sell their stock and property interest ", but instead fixes two figures — providing in effect that Schwartz, one of the minority stockholders, shall receive $1,400 a share for his stock, in the event he does not buy out the majority stockholders, and then provides that one of the majority stockholders shall purchase the stock of the petitioner, Colletti, the other minority stockholder, and his property interest, at the price of $700 per share of stock.

Finally, the arbitrators have not set a figure at which the members of either group may " choose " to buy or sell their stock and property interest; this is contrary to the submission in that, under the plain terms of the demand, a choice to buy or sell at the figure to be fixed by the arbitrators was to be left to " either group ".

This is a case where the arbitrators " gave a completely irrational construction " to the plain terms of the submission. (*Matter of National Cash Register Co.* [*Wilson*], 8 N Y 2d 377, 383.) Instead of making " a final and definite award upon the subject matter submitted " (CPLR 7511, subd. [b]), within the framework of the agreement of the parties and the controversies described in the demand and counterdemand, the arbitrators have failed to determine the disputes between the stockholders that were submitted to them and, instead, have provided for an unauthorized purchase and sale of stockholders' interests.

The award should be vacated because it is not only imperfect but, in effect, it has made a new contract between the parties, and this is not permitted.

BREITEL, J. P., RABIN, VALENTE and STEUER, JJ., concur in *Per Curiam* opinion; EAGER, J., dissents in opinion.

Judgment affirmed, with $50 costs to respondents.