**Peter F. CLARK et al., Plaintiffs,**

v.

**KRAFTCO CORPORATION et al., Defendants.**

**No. 70 Civ. 1246.**

United States District Court, S. D. New York.

Feb. 25, 1971.

Cohen, Weiss & Simon, by Samuel J. Cohen, New York City, for plaintiff Unions.

Sullivan & Cromwell, by John F. Cannon, New York City, for defendant Kraftco Corp.

## OPINION

TYLER, District Judge.

This lawsuit concerns an agreement (hereinafter "Breyer Agreement") between Locals 757 and 680 of the Ice Cream, and Milk Drivers and Employees Unions, respectively, and Kraftco Corporation (hereinafter "Kraftco" or "the company") respecting Kraftco's liability to an industry-wide employee pension fund (the "Fund") on account of the termination of operations at its Newark, New Jersey plant. By way of summary judgment, the Union plaintiffs seek to enforce the determination of the actuary, Segal & Co., the Fund's consultants to whom the contract referred the liability question, that the plant closing "damaged" the Fund in the amount of $978,100. Opposing summary judgment, defendants argue that the determination of the actuary reflects an egregious and unintended departure from the established method of assessing employer contributions to the Fund. At a hearing on January 11, 1971, the undersigned delivered orally an interim opinion setting forth the perceived deficiencies in the parties' (particularly plaintiffs') positions and suggesting that further evidence might be produced in support thereof. Both counsel declined further submissions, and, at their request, oral argument was heard on January 26, 1971.

The parties do not dispute that the initial and all subsequent industry-wide collective bargaining agreements provided that assessments be levied upon

contributing employers based on the "entry age normal cost", plus interest on the "unfunded accrued liability". This method requires that for the working term of each employee, the participating employer contributes a determined amount, adjusted for turnover and mortality, which, at an assumed rate of investment return, will accumulate sufficient assets to pay the promised retirement benefits. In addition, the employer pays annual interest at the rate of 3% on the accrued liability, which consists of the sum of past service credit extended to existing employees at the inception of the Fund. These credits comprise a deficit of the Fund, an amount which increases along with benefit levels. This accrued liability was not to be amortized unless the participants or their representatives were to determine, with the advice of the actuary, that amortization is necessary to maintain the ability of the Fund to meet its continuing liability to pensioners. The accrued liability, then, constitutes only a theoretical or potential debt, dependent upon economic conditions generally and in the industry itself. Since it is acknowledged that the major portion of the Segal figure comprises a present assessment in respect of the unfunded accrued liability attributable to Kraftco's Newark employees, there is no question but that the assessment represents a departure, to some extent, from the traditional funding practice.

The contest turns on (1) the extent to which this court is empowered to scrutinize the actuarial determination, and (2) the intended scope of the Breyer Agreement's submission to the actuary.

The company's challenge may fairly be characterized not as charging fraud or misconduct but gross error. There is little question but that were the Segal determination the product of an arbitral proceeding, it would be entitled to confirmation. Short of fraud or misconduct, errors of judgment or law are not subject to correction by the courts. Shevell v. Besen, 29 A.D.2d 751, 287 N. Y.S.2d 340 (1st Dept.1968), Korein v. Rabin, 29 A.D.2d 351, 287 N.Y.S.2d 975 (1st Dept.1968). Even resolution of ambiguity in the submission is for the arbitrators. Matter of Colleti, 23 A.D. 2d 245, 260 N.Y.S.2d 130, 133 (1st Dept.1965). Only if the construction adopted by the arbitrators defies all reason will an award be set aside. Granite Worsted Mills, Inc. v. Aaronson Cowen, Ltd., 25 N.Y.2d 451, 306 N.Y.S.2d 934 (1969), Matter of National Cash Register Co. (Wilson) 8 N.Y.2d 377, 208 N. Y.S.2d 951, 955, 171 N.E.2d 302 (1960), Matter of S & W Fine Foods Inc., 7 N. Y.2d 1018, 200 N.Y.S.2d 59, 166 N.E.2d 853 (1960).

Whereas arbitral awards are frequently before the courts for confirmation, judicial review of appraisals is rare. What little precedent there is for guidance, however, suggests, as the company urges, that review of appraisals is governed by different and broader standards. Cohen v. Atlas Assurance Co., 163 App.Div. 381, 148 N.Y.S. 563 (1st Dept. 1914), enumerated those factors which, if shown by clear and convincing evidence, would vitiate an appraisal:

* * * any inference or finding that the appraisal was not honestly made in good faith, *and, under the circumstances, with sufficient thoroughness, and by following the ordinary and only tests that could be applied.* (emphasis added) at 566.

In Gervant v. New England Fire Insurance Co., 306 N.Y. 393, 118 N.E.2d 574 (1954), the New York Court of Appeals vacated an award because two of three appraisers refused to hear evidence on what the court deemed essential ingredients of a fire loss appraisal. The appraisers' rejection of such measures of loss as market value was held to be "misconduct in a legal sense," *supra* at 399, 118 N.E.2d 574. Although, framing the defect as legal misconduct, the *Gervant* court specifically refused to endorse the expedient of declaring appraisals and arbitrations subject to the same standards of review. *Supra,* at 399, 400, 118 N.E.2d 574.

Little support for plaintiffs' position that the court may not review an appraisal determination for reasonable correctness is found in the latest revision of New York procedure. New York CPLR § 7601. The object of the statute was to empower the courts to compel performance of an appraisal agreement, not to set standards for judicial confirmation. Moreover, the permissive language of section 7601, contrasted to the mandatory enforcement directed by section 7503 governing arbitrations, strongly suggests that the legislature intended to preserve certain traditional distinctions between the two processes. See discussion concerning In re Delmar Box Co., 309 N.Y. 60, 127 N.E.2d 808 (1955), infra. A court reviewing an agreement to arbitrate may only declare the contract void or compel arbitration. On the other hand, when reviewing an appraisal agreement, a court not only has the newly delegated power to compel appraisal, but retains as well the authority to substitute itself for the appraisers or to enforce the agreement as if it intended the accoutrements of arbitration. Practice Commentary to N.Y. CPLR § 7601 (McKinney 1963). Thus, notwithstanding imprecise dicta equating the rights to challenge appraisals and arbitrations, the Court of Appeals gave effect to the permissive language of the statute by refusing confirmation of the appraiser's determination explicitly because confirmation lies in the discretion of the trial court. Dimson v. Elghanayan, 19 N.Y. 2d 316, 280 N.Y.S.2d 97, 227 N.E.2d 10 (1967).

While not inconceivable that New York will follow those sister states which have accorded appraisal the same presumptive validity as arbitration, such a course would fly in the face of precedent and also, perhaps, good sense. The differences between the two processes were quite fully set forth by the present Chief Judge of the State's highest court in In re Delmar Box Co., supra:

An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties, upon which judgment may be entered after judicial confirmation of the arbitration award, Civ.Prac.Act, § 1464, while the agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action. See Matter of American Ins. Co., 208 App.Div. 168, 170–171, 203 N.Y.S. 206, 207–208. Appraisal proceedings are, moreover, attended by a larger measure of informality, see Strome v. London Assur. Corp., 20 App.Div. 571, 573, 47 N.Y.S. 481, 483, affirmed 162 N.Y. 627, 57 N.E. 1125, and appraisers are " 'not bound to the strict judicial investigation of an arbitration.' " See Matter of American Ins. Co., supra, 208 App. Div. 168, 171, 203 N.Y.S. 206, 208. Arbitrators are required to take a formal oath, Civ.Prac.Act, § 1455, and may act only upon proof adduced at a hearing of which due notice has been given to each of the parties, Civ.Prac. Act, § 1454. They may not predicate their award upon evidence garnered through an ex parte investigation of their own, at least unless so authorized by the parties. See Stefano Berizzi Co. v. Krausz, 239 N.Y. 315, 146 N.E. 436. Appraisers, on the other hand, are not required to take an oath. See Syracuse Savings Bank v. Yorkshire Ins. Co., 301 N.Y. 403, 411, 94 N.E.2d 73, 78; Wurster v. Armfield, 175 N.Y. 256, 264, 67 N.E. 584, 586; Williams v. Hamilton Fire Ins. Co., 118 Misc. 799, 194 N.Y.S. 798. They are likewise "not obliged to give the claimant any formal notice or to hear evidence"; and they may apparently proceed by ex parte investigation, so long as the parties are given an opportunity to make statements and explanations to the appraisers with regard to the matters in issue. See Kaiser v. Hamburg-Bremen Fire Ins. Co., 59 App.Div. 525, 530, 69 N. Y.S. 344, 347, affirmed 172 N.Y. 663, 65 N.E. 1118; Townsend v. Greenwich

Ins. Co., 86 App.Div. 323, 326–327, 83 N.Y.S. 909, 911–912, affirmed 178 N. Y. 634, 71 N.E. 1140; Matter of American Ins. Co., *supra*, 208 App. Div. 168, 171, 203 N.Y.S. 206, 208.[1]

Furthermore, in an arbitration, all the arbitrators, if there be more than one, "must meet together and hear all the allegations and proofs of the parties", Civ.Prac.Act, § 1456. The standard appraisal clause, in contrast, specifically recites that the umpire is not to participate in the appraisal in all cases, but is only to pass on such differences as there may be between the appraisers designated by the respective parties. In addition, the vacatur of an arbitration award invariably results in a new arbitration, Civ. Prac.Act, § 1462; see Matter of Fletcher, 237 N.Y. 440, 449, 143 N.E. 248, 251, whereas after an appraisal award has been set aside without any fault on the part of the insured, he is not required to submit to any further appraisement but is free to litigate the issues in an action at law on the policy. See Gervant v. New England Fire Ins. Co., 306 N.Y. 393, 400, 118 N.E.2d 574, 577.

*Delmar Box* refused to give effect to a minor revision of the arbitration statute which arguably empowered the courts to compel performance of an appraisal agreement so long as the formalities of arbitration were observed. The absence of a clear legislative directive to change traditional judicial practice is as relevant here as it was in that case:

> It is a cardinal principle of statutory interpretation that the intention to change a long-established rule or principle is not to be imputed to the legislature in the absence of a clear manifestation. See Homnyack v. Prudential Ins. Co. of America, 194 N.Y. 456, 460, 87 N.E. 769, 771; Seligman v. Friedlander, 199 N.Y. 373, 376, 92 N. E. 1047, 1048. *Delmar Box, supra,* 309 N.Y. at 66, 127 N.E.2d at 812.

Analogously, absent a specific enactment by the legislature respecting the criteria for judicial review of appraisals, the settled practice of vacating an appraisal or actuarial determination for failure to follow the correct evaluative formula must be followed in this case.

■ Exception from this general rule might be permissible, however, if there were clear evidence that the parties intended to confer upon Segal & Co. the authority to resolve the ambiguity in the contractual language.[2] Contention to this effect is the mainstay of plaintiffs' case for summary judgment. Although adoption of this position would greatly simplify the court's task, the events surrounding execution of the Breyer Agreement do not support such an inference. It was conceded at the January 26 hearing that there was no discussion between the contracting parties concerning the meaning of "impact" or "adversely affected" or the extent of authority they intended to confer upon Segal. Two additional circumstances compel me to re-

---

1. In distinction to the procedures followed in insurance appraisals, no opportunity to make statements and explanations to the actuaries need be (nor was in this case) afforded. This factor underscores further the danger potential in shielding appraisals, to the same extent as arbitrations, from judicial scrutiny.

2. Section 2 of the Breyer Agreement, the only portion relevant to this suit provides:

   "The consultants to the pension fund shall make an actuarial study of the *impact, if any, of the discontinuance of operations and the termination of the employees upon the pension fund* as of the date of the discontinuance of such operations, the cost of which shall be borne jointly by the company and the fund. *If the consultants to the fund determine that the fund has been adversely affected as a result of the discontinuance of operations by the company at its Newark facility*, the company agrees to pay to the fund the sums determined by the consultants. The decision of the consultants shall be final and binding on the parties. (emphasis added)."

ject plaintiffs' contention: (1) this section of the Breyer Agreement was incidental to the major provision concerning severance pay, upon which the discussions focused; and (2) the problem submitted for evaluation involved not a tangible *res*, such as a house destroyed by fire, but an intangible projection which presented a question of first impression for this particular Fund. Therefore, I am constrained to find that the contractual language employed was inadvertently broad, easily susceptible to misunderstanding, and that it was not intended thereby to submit to Segal & Co. a problem of interpretation which exceeds the traditional scope and expertise of an actuary. Indeed, the company has made a strong showing that the actuaries gave virtually no attention to the problem of interpreting their charge.

Accordingly, the court holds that summary judgment must be denied and the issue remanded to the actuaries for redetermination pursuant to CPLR section 7601 and in accordance with the determinations hereinafter as to the proper execution of their commission.

■ Since both counsel declined the court's request for further submissions, the specific import of the contractual language must be determined by the court to the extent possible from the present record. Plaintiffs have proffered no evidence directly supporting the correctness of Segal's approach. The affidavit of Preston Bassett, Vice-President and Actuary of an independent consulting firm, submitted by defendants and the deposition testimony of Mr. Elkin, Segal & Co.'s chief actuary, establish beyond a peradventure that the Segal determination reflects an egregious departure from past funding practice. Specifically, I find that a present assessment of accrued liability attributable to

Kraftco's Newark employees constituted error, in that it disregarded the basic decision not to amortize the accrued liability and imposed liability unequally upon Kraftco, particularly in view of Kraftco's continued participation in the Fund through its other plants.

Kraftco takes the position that the unfunded accrued liability should play absolutely no part in the determination of "impact" of the plant closing, and its affidavits, particularly the Bassett affidavit, support that position. While that position may prove to be correct, the problem of the proper treatment of the accrued liability factor is too complex to dispose of on the basis of affidavits alone. Rather than substitute the court's judgment for that of the appraisers, I think it singularly appropriate to take advantage here of the latitude offered by N.Y. CPLR § 7601 to remand and enforce this appraisal "as if it were an arbitration". Therefore, remand procedure before Segal & Co. shall be attended by the formalities which normally accompany an arbitration proceeding, subject to waiver by stipulation of the parties. This will guarantee an opportunity to the parties to air their respective positions as to the appropriate method of computation.

In view of the imminent resumption of labor negotiations this spring, however, the court would not object to deferring the remand to permit the parties, with, perhaps, the advice of Segal & Co., to provide for proper disposition of this issue within the context of the industry-wide collective bargaining agreement which gave birth to the Fund itself. Counsel should inform the court if they wish to proceed in this manner.

Summary judgment is denied. The appraisal determination is vacated and remanded. Settle order accordingly.