OPINION OF THE COURT

Per Curiam.

Final judgment entered November 14, 1980 is modified to the extent of reducing the monetary award from $287,258.44 to $285,199.97, with interest payable upon the rental arrears, and, as so modified, affirmed, with $25 costs to the landlord.
“Landlord” is the master lessee of the subject premises occupied entirely by the tenant, Chock Full O’Nuts Corpo *616 ration. During the first 20 years of this 30-year lease between the parties and their predecessors in interest, the tenant paid an annual rental of $23,600. Article 46 of the specified lease provides: “It is understood and agreed by and between the parties hereto that the parties will cause to be made an appraisal of the property herein demised in order to fix a reasonable rental for that period of the term on and after the twentieth year. Such appraisal shall be made at time immediately preceding the end of the 20 years of the term herein demised and rent commencing with the 21st year shall be based upon the appraisal set by the parties. Each party shall appoint an impartial appraiser and each of the two shall in turn appoint a third disinterested appraiser and the appraisal as fixed by at least two of three herein named shall become final and binding upon the parties hereto. It is understood that the rental to be fixed may be either more or less than the amount fixed herein as predicated upon such written appraisal.”
The parties were unable to agree on a reasonable rental for the last 10 years of the lease and each appointed its appraiser pursuant to article 46. The two appraisers were unable to agree on a reasonable rental and they appointed “a third disinterested appraiser”. The findings of that third appraiser were approved by the landlord’s appointee but not by the tenant’s appraiser. The majority appraisal report fixed $73,200 per annum as the reasonable rental for the premises for the period 1975-1985. The tenant refused to pay that amount (albeit it continued to pay the original annual rent of $23,600) and the landlord instituted this nonpayment summary proceeding.
By order of September 12, 1977 the court below concluded that the appraisers had misconceived their duties in determining the reasonable rent; the court held that under article 46 of the lease, the appraisers were charged with determining the fair market value of the property rather than determining its reasonable rental value. Upon so holding, the court retained jurisdiction of the summary proceeding and gave the parties six weeks to agree on a reasonable rent for the next 10 years. If they could not do so, it directed them to appoint new appraisers who would *617 arrive at two separate figures, viz., the market value of the property in 1955 and the value in 1975. These figures were “for purposes of comparison”. If based on these figures the parties could still not fix a reasonable rent, they were to return to court. The court would hear the experts and the court would then fix a reasonable rent for the last 10 years of the lease.
In accordance with the court’s instructions, the landlord and the tenant each selected one new appraiser; the two newly appointed appraisers agreed on the reasonable market value of the property for 1955 but differed widely on the property value in 1975. The parties were still unable to fix a reasonable rent based on those figures and the court in its order of November 10, 1980 did so, basing its final figure on the ratios of rent paid to market value in 1955 and 1975. The court found that the landlord’s newly appointed appraiser’s estimate of market value for 1975 was “more plausible, more credible, of greater reliability and closer to actuality” than that arrived at by the tenant’s new appraiser. The court then fixed the rental at $73,558, a scant $358 more than the original rental figure set by the initial set of appraisers. The parties had agreed that the court would sit as if it were a court of general jurisdiction in fixing the rental. They further agreed not to raise the issue of the power of the court to fix the rental on any appeal.
On appeal the tenant stresses the lack of jurisdiction of the Civil Court to render the type of equitable decree (fixing of the rent) that it undertook in the November 10, 1980 order. The landlord focuses on the alleged error in the court’s September 12,1977 order which sent the parties (or their new appraisers) back to the drawing board to come up with an appraisal of property value rather than rental value. The September 12, 1977 order of the court that directed a new and different type of appraisal is brought up for review on this appeal (CPLR 5501, subd [a], par 1). In that regard it must be determined whether the court’s rejection of the original majority appraisal was proper. Professor Joseph M. McLaughlin’s Practice Commentaries to CPLR 7601 are instructive in assessing the weight generally to be afforded by the court to a determination of *618 an issue submitted to a common-law appraisal. In this regard Professor McLaughlin observes (Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C7601:l, p 661): “Although the phrase ‘confirm the appraisal’ is sometimes used, it is actually an inaccuracy. There is no independent motion to confirm an appraisal award as there is with an arbitration award. Rather, the parties must commence a plenary action on the basic controversy and in that action they will offer the appraisal into evidence. At that point, the court will be called upon to review the award. Cf. Matter of Hollander v. Kessler, 1963, 19 A.D. 2d 445, 243 N.Y.S.2d 979, aff’d, 15 N.Y. 2d 586, 255 N.Y.S.2d 257, 203 N.E.2d 646.” Since the appraisal here at issue was for the ultimate purpose of fixing a reasonable rental under a lease, we find it of no moment that the specified appraisal was considered by the court in the context of a summary proceeding to collect rent allegedly due under the lease rather than in the context of a plenary action. Professor McLaughlin goes on to observe: “When a court later reviews an appraisal figure, what standard of review does the court employ? In Clark v. Kraftco Corp., D.C.N.Y., 1971, 323 F. Supp. 358, a federal court studied the New York precedents and concluded that, at least where the appraisal is not conducted with the formalities of arbitration, the court is not as hidebound as it would be with an arbitration award, and may reject an appraisal if the court believes that the appraisers did not review the case with sufficient thoroughness. This, of course, gives the courts greater control over appraisals than arbitration awards.” (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C7601:1, pp 661-662.)
Acknowledging this greater degree of judicial control over appraisal awards, we nonetheless conclude that the court below erred in rejecting the original majority appraisal award, upon which landlord’s nonpayment proceeding was premised. The major source of authority for the court’s September 12, 1977 determination that market value determination rather than a rental appraisal was required was the dictionary. It has been noted that it is inadvisable “to make a fortress out of the dictionary” *619 (Grayshaw v New Amsterdam Apts. Co., 106 Misc 2d 936, 939). With contracts as with statutes, the purpose or object to be accomplished is “the surest guide to their meaning” (supra, p 939). Parties provide for the appointment of appraisers because they want to rely on their expertise in settling vexatious problems. They make appraisal agreements final because they want to avoid litigation (Moore v Eadie, 245 NY 166, 171; Ice Serv. Co. v Phipps Estates, 245 NY 393, 397). Indeed, article 46 states: “and the appraisal as fixed by at least two of three herein named shall become final and binding upon the parties hereto”. If the only final and binding finding intended was as to the market value of the property, the parties were not going to be any closer to a solution to their problem than before the efforts of the experts were expended. No formula or guideline is contained in the lease itself as to how the fair or reasonable 10-year rental might be determined from a bare market value figure.
Parenthetically, the view of article 46 adopted by the trial court would render it a mere agreement to agree, thus invalid as a contractual provision since lacking the binding element of definiteness (Martin Delicatessen v Schumacher, 52 NY2d 105, 109). There would be no “methodology for determining the rent” to be found in the “four corners of the lease” (supra, p 110). As in Martin Delicatessen, neither tenant nor landlord would be bound by any formula; the interpretation of the court below would “leave no room for legal construction or resolution of ambiguity” (supra, p 111). The clause would be nugatory and unavailing to either party.
The three original appraisers had all construed article 46 of the lease as calling upon them to set a reasonable rental figure. The landlord’s attorney so interpreted the lease and the tenant’s vice-president instructed its appraiser to “determine the fair market rental value of the store”. Even viewing the original clause as ambiguous as to whether the appraisers were to fix property or rental value, the uniform interpretation accorded it by the parties and their appointees in this regard was entitled to great weight. As noted in Morehouse v Woodruff (218 NY 494, 502-503), “If the question be deemed doubtful, the practical *620 construction which the parties by their uniform and unquestioned acts put upon the *** instruments *** would be entitled to weight” (and see, also, Janos v Peck, 21 AD2d 529, 535). It has even been noted, “‘Those who make a contract, may unmake it.’ ” (Alcon v Kinton Realty, 2 AD2d 454, 456.) Here, both parties consistently adhered to the view that the lease called for a determination, by appraisers, of rental value — at least until the majority arrived at a determination that the tenant refused to accept. The determination that the lease required a rental appraisal was rational and should not have been rejected by the court below (cf. Pavilion Cent. School Dist. v Pavilion Faculty Assn., 51 AD2d 119, 123).
As noted, the tenant levels its major attack on the November 10, 1980 order of the court. It contends that jurisdiction of a court may not be conferred by consent or stipulation of the parties (see Patrone v Howlett, Inc., 237 NY 394, 397). This court has recently noted that the Civil Court has clearly circumscribed and limited equitable powers (Consolidated Edison v Miller, NYLJ, June 30, 1980, p 6, col 4). While the parties here specifically agreed not to raise this issue on appeal (i.e., lack of jurisdiction), even that waiver would be ineffective to create jurisdiction where there is no statutory conferral (Zurich Ins. Co. v Evans, 90 Misc 2d 286, 287). In view of our determination that the court erred in its September 12, 1977 rejection of the originally proffered. appraisals, it is unnecessary to pass on the validity of the exercise of apparent “equitable” power by the lower court in its November 10, 1980 order.
Interest should have been awarded from the earliest ascertainable date the cause of action existed, here the beginning of the twenty-first year of the lease (CPLR 5001, subds [a], [b]). The tenant had the use of funds it should have been paying to the landlord during the period of this protracted dispute (Prager v New Jersey Fid. & Plate Glass Ins. Co. of Newark, 245 NY 1, 5-6; Knab Bros. v Town of Lewiston, 58 AD2d 1016, 1017). Interest should be calculated on a monthly basis since that was the agreed method of payment.
*621 The petitioner’s cross motion to dismiss the appeal as untimely is denied.
Concur: Hughes, J. P., Riccobono and Asch, JJ.