OPINION OF THE COURT
Paul B. Phinney, III, J.
Petitioners have brought on a summary proceeding alleging that the respondent tenants have failed to pay the rent as required in the lease in the sum of $2,333.33 and seek recovery of unpaid rent plus legal fees in the sum of $600 plus costs and disbursements. The respondent has appeared and denied the allegations and has set up an affirmative defense that the rent has been incorrectly calculated and, in fact, is a lower amount which Chemical Bank has forwarded to petitioner and which petitioner has rejected. Chemical Bank is also counterclaiming for one half the fee of the appraiser in the sum of $1,250. However, in later papers the attorneys for the respondent bank have admitted that the petitioner landlords have, in fact, paid one half the appraiser’s fee, albeit late, and accordingly the counterclaim is dismissed as moot.
Additionally, petitioner has brought on a cross motion to compel compliance with a subpoena duces tecum demanding that various documents be produced at a summary proceeding scheduled to be held before the court on March 20, 1990 at 3:30 p.m. wherein the petitioners have subpoenaed, inter alia, contracts of sale and closing statements for sale of all Chemical Bank branches to First National Bank of Highland from January 1, 1988 and all Federal and State tax returns from January 1, 1989. Respondents have moved to quash the subpoenas as to those above-listed items.
The factual setting of this matter is that the respondent chose to exercise its option to renew a lease originally entered into between the petitioners and respondent’s predecessor on May 1, 1964. It is undisputed that the respondent timely exercised its option to renew and set its valuation of the rental based on a formula set forth in the lease. Petitioners also, pursuant to the lease, timely objected to the lessee’s valuation and rental amount based thereon, and timely moved, pursuant to the lease, to have the appraisers for both the petitioner and respondent meet at the rented premises and select a third appraiser.
The portion of the lease relied on by both parties is found in section rv (a) on page four of the lease which provides that if *392 the lessee exercises its option to renew, then the annual rental for the extension period shall be an amount equal to 8% of the value of the land, buildings and improvements, but not less than the rental for the proceeding year. Specifically excluded from consideration (of the appraiser) shall be those buildings or improvements which were erected or installed at the sole expense of the lessee. It was further provided that the appraisal as determined by the third-party appraiser shall be binding on both the lessor and the lessee.
In this case the third-party appraiser was Thomas G. Martin who, pursuant to a letter dated July 4, 1989 accompanying his appraisal, appraised the fair market value in fee simple, as of April 15, 1989, at $350,000 (while not relevant to the decision, this court is amazed that Mr. Martin obtained the services of a secretary to type a letter on July 4, a national holiday!).
The gravamen of respondent’s defense is that the appraiser totally failed to take into account, and deduct from his valuation of the real property, the buildings or improvements that were erected by the lessee as was required pursuant to the terms of the lease. Respondent further argues, and has submitted affidavits from its real estate officer, Robert S. Wagner, that the value of the improvements made by the lessee are equal to or exceed $123,155.75, and thus a reduction of that amount from the appraised value leaves a value of the real property of $146,844.43, which when multiplied by 8% yields a figure less than the previous year’s rent and thus the previous year’s rent of $1,190.42 should apply. Respondent further calls upon the court to review the appraisal and hold the same was improperly done and, in effect, have a hearing to determine the correct valuation of the property.
Petitioner opposes on the ground that the relief that the respondent is asking is beyond the power of the Justice Court and that further, the respondent has missed his time deadlines for bringing this matter before a proper court. CPLR 7601 provides that a special proceeding may be commenced to specifically enforce an agreement that a question of valuation or appraisal be determined by a person named or to be selected and that the court may enforce such an agreement as if it were an arbitration agreement brought under CPLR article 75.
The first issue is whether or not this court has jurisdiction to resolve this issue. Petitioner cites UJCA 206, which pro *393 vided in subdivision (b) "CPLR article 75, relating to arbitrability and arbitration, shall not be applicable in the court. If it appears to the court that a genuine issue exists as to the arbitrability of the matter for which the action has been brought, the court shall stay the action until such issue has been resolved by a court of competent jurisdiction.” It is thus clear that if the relief respondents are seeking can only be provided pursuant to CPLR article 75, this court has no jurisdiction. CPLR 7601 provides that a party may commence a special proceéding to enforce an agreement providing for a valuation appraisal to be determined by a person named or to be selected and that the court should enforce such an agreement as if it were an arbitration agreement and the proceeding should be conducted as if brought under CPLR article 75. The question before this court is whether section 7601 only relates to proceedings to enforce an appraisal pursuant to an agreement or is broader than that and requires the court to apply article 75 to all questions concerning an appraisal. The Court of Appeals in Matter of Penn Cent. Corp. (Consolidated Rail Corp.) (56 NY2d 120 [1982]) ruled on a case which, in many ways is almost identical to the case at bar. In Matter of Penn Cent. Corp. (Consolidated Rail Corp.) (supra), Penn Central and Consolidated Rail Corporations had a dispute as to the valuation of their respective rights to a certain piece of property that was sold to the Triborough Bridge and Tunnel Authority. Conrail owned the surface rights and Penn Central owned the air rights. In order not to effect or hold up the sale, both parties agreed to the same and placed the proceeds in an escrow account and the valuation of their respective rights, pursuant to a letter agreement, was to be determined by three qualified disinterested appraisers. Certain written stipulations of fact were agreed to and given to the appraisers and the appraisers then rendered their decision holding that Penn Central was entitled to 65% of the proceeds and Conrail was entitled to 35% of the proceeds. Conrail refused to accept the appraisal and Penn Central commenced a proceeding under CPLR 7601 to enforce the appraisal. In rendering its decision, the Court of Appeals recognized that the courts have historically recognized the basic distinction between appraisals and arbitration, in that appraisals are much less formal and the courts historically have not simply rubber-stamped the results of appraisals. The court went on to hold that in the particular facts and circumstances of that case, where the appraiser’s valuation was the only issue in dispute, that the court could *394 confirm the appraisal report in a proceeding under CPLR 7601. The court noted that the Legislature did not seem to wish to restrict the court’s rights and in fact the court noted that apparently the Legislature wished to give the court three options in dealing with the confirmation of appraisals; and they were (1) to order specific performance of an appraisal agreement, (2) direct the parties to proceed to arbitration, or (3) exercise its equitable discretion by adopting some form of relief appropriate to the particular case, including remedies not specifically identified in the statute. The court then went on to.hold that in that particular case, since the only dispute between the parties was the question of valuation of their respective rights, which they have both agreed to submit to a panel of appraisers, that the court would, on a motion under CPLR 7601, confirm the report. The court specifically noted that ConraiPs claim of defects in the appraisal award could not stand as Conrail had stipulated to several of the facts which it now claimed were in error. The court further held, citing Matter of Dimson (Elghanayan) (19 NY2d 316), that under CPLR 7601 a dissatisfied party who participated in the selection of an appraiser has no greater right to challenge the appraiser’s evaluation than he would have to attack an award rendered by an arbitrator. The court went on to specifically find that none of the alleged defects required the setting aside of the appraiser’s award under that standard.
In the above case, it appears clear, that pursuant to the Court of Appeals, that a proceeding can be brought pursuant to CPLR 7601 to confirm an arbitration award, but the court is not required to automatically do so as if the matter were brought under CPLR article 75, but that the court may exercise its inherent discretionary and equitable powers to fashion a decision or award as the circumstances dictate. In the case at bar, it appears from a review of the appraisal that the appraiser in fact failed to take into account any deduction or evaluation of the improvements erected solely by the lessee. The court would note that under CPLR 7511 (c) that a court may modify an arbitrator’s award if there is a miscalculation of figures or a mistake in the description of any person, thing or property referred to in the award.
The court rejects the petitioners’ position that the respondent has failed to meet the time limits for challenging the arbitration award as set forth in CPLR article 75 as Matter of Penn Cent. Corp. (Consolidated Rail Corp.) (56 NY2d 120, supra) does not require the use of the procedures or limita *395 tions set forth in article 75 when CPLR 7601 is used to confirm an appraisal.
The next issue for the court to decide is whether it has jurisdiction to decide whether or not the appraisal report was proper. UJCA 204 provides the court shall have jurisdiction of summary proceedings, and indeed the action commenced by the petitioner is a summary proceeding to recover possession of the real property and the alleged rents due thereon. Section 212 further provides that, except as otherwise provided by law, in the exercise of its jurisdiction the court shall have all the powers that the Supreme Court would have in like actions and proceedings. This court is mindful of the issue of jurisdiction raised in European-American Banking Corp. v Chock Full O’Nuts Corp. (109 Misc 2d 615), however it should be noted that the Appellate Term never addressed the issue of whether or not the Civil Court of the City of New York (which like the Justice Court is a court of limited jurisdiction) exceeds its jurisdiction by trying to exercise “equitable” powers and instead relied on a legal error of the lower court in refusing to uphold the original appraiser’s finding. Since a Supreme Court could clearly hear a summary proceeding and since the Supreme Court certainly has broad powers regarding summary proceedings (and other proceedings) this court finds that it, pursuant to statute, does have the power to decide the issues raised by the respondent.
Further, the court in European-American Banking Corp. (supra) specifically found that the issue of the appraisal’s accuracy and enforcement could properly be brought in the context of a summary proceeding.
Accordingly, this court holds that it has the jurisdiction to entertain respondent’s argument that the appraisal was defective in that it did not include any reduction from the valuation of the improvements made solely by the lessee, and that that defect is so material that this court should exercise its power to at least hold a hearing to determine whether or not, in fact, the appraiser failed to take into consideration the value of lessee paid-for improvements, and if, in fact, the appraiser did so fail to take that into consideration and if the value that the lessee paid for improvements materially effects the rental value, then this court will order a reappraisal and/ or such other remedies as will effectuate the contractual rights between the parties.
As to respondent’s cross motion to quash the subpoena as it *396 deals with certain of its records, the court grants that motion to the extent that the court strikes the portion of the subpoena requiring the production of all contracts of sale and closing statements for sale of all Chemical Bank branches to First National Bank of Highland, New York, for a period of January 1, 1988 to date as the same can have no direct or relevant bearing on the issue of the value of the improvements, if any, made by the respondent to the particular branch which is the subject of this litigation. The court modifies the subpoena as it relates to Federal and State tax returns for the period January 1, 1989 to date to the extent that only those portions of any Federal or State tax returns dealing with the depreciation of real property improvements at the branch which is the subject of this litigation need be produced and no others. Further, the court strikes the portion of the judicial subpoena requiring all financial statements as of December 31, 1989 and/or closest prior date thereto as a general, broad financial statement dealing with such a large bank would hardly be expected to include information relevant to the issue at bar. In all other respects, the motion to quash the subpoena is denied.
The parties, and their witnesses, shall next appear before this court on Tuesday, April 3, 1990, at 4:00 p.m. for a hearing on the issue of whether or not the appraiser, Thomas G. Martin, failed to include in his calculation a reduction for the value of lessee paid-for improvements, and if so, the value of those lessee paid-for improvements and the effect of including the same on the appraiser’s valuation on the value of the property for the purposes of setting the rental value of the same.