OPINION OF THE COURT
Wachtler, J.
Petitioner Penn Central Corporation commenced this proceeding to confirm a determination of three appraisers made pursuant to an agreement between petitioner and Consolidated Rail Corporation (Conrail). The trial court dismissed the petition on the ground that the court lacked the power to confirm an appraisal. The Appellate Division reversed and confirmed the determination holding that, although it dealt with valuation, it was an arbitration award resolving the only dispute between the parties. Conrail appeals as a matter of right on the basis of the reversal (CPLR 5601, subd [a]).
In 1976 Conrail acquired the surface rights to a railroad yard, on the west side of Manhattan, owned by the Penn Central Transportation Company. The deed reserved the air rights over the property for the owner, provided they were utilized within a specified period of time. These air rights subsequently passed from the bankrupt Penn Central Transportation Company to its successor, the petitioner in this proceeding. In 1980 the petitioner and Conrail agreed to sell their interests in the property to the Triborough Bridge and Tunnel Authority for approximately $17,000,000 but could not agree on the proper allocation of the proceeds. They agreed, however, to complete the sale, to place the proceeds in escrow and to *124 appoint a panel of appraisers to determine the proper allocation of the funds.
The original letter agreement, proposed by Conrail and accepted by petitioner in July of 1980, states that “it is in our mutual interest that the question of allocation be settled as expeditiously as possible” and that it is “our opinion that the impanelling of not less than three qualified and disinterested appraisers presents the best forum for a prompt, professional and equitable distribution of the sales proceeds”. It provides that each side would select an appraiser with designated qualifications, that the third appraiser would be chosen by the first two and that a “decision of two-thirds of the panel would control”. In addition both sides would “have an opportunity formally to present their positions to the panel” which in turn would “make such independent investigation as it deemed necessary” prior to rendering its decision.
The letter agreement also states that it “is written in settlement of the pending or prospective dispute between our respective organizations and is not in any way an admission of any facts currently or prospectively at issue”.[1] However, when the panel was selected in November, 1980, the parties submitted a statement of “Facts and General Guidelines For The Appraiser Panel” containing a description of the property, its dimensions, the point at which the air rights begin and a concession by Conrail that utilization of the rights by April 1,1986 would be timely and that an earlier date (April 1,1981) mentioned in the deed “does not apply”. This statement defined the role of the appraisers as follows: “Since PCC and Conrail could not agree on a fair allocation of the proceeds from the Sale, the purpose of the assignment of the Appraiser Panel is to determine the allocation of the proceeds of the Sale between PCC’s fee interest in the air rights and Conrail’s fee interest in the surface rights utilizing appraisal techniques generally accepted by the American Institute of Real Estate Appraisers.” The guidelines also included a schedule for the submission by the parties of written reports and rebuttals, and requests by the panel for “any other input, if necessary, to *125 complete its work” and “reach an allocation conclusion” which should be accomplished “approximatly three weeks from receipt of the original written reports”. In December the parties submitted a new and tighter schedule in order to further expedite the determination.
In accordance with the guidelines the parties submitted written reports and rebuttals. The appraisers inspected the site, requested and received additional information and issued their report on January 5, 1981. The report concludes that “a fair and reasonable allocation of the purchase price” was 65% for Penn Central with respect to its air rights and 35% for Conrail as owner of the surface rights. The report identified seven “salient points” or factors considered by the appraisers in making the determination. It also stated that the decision was unanimous and contained a certification as required by the rules of the American Institute of Real Estate Appraisers (AIA).
When Conrail refused to accept the report and to direct the escrow agent to release the sale proceeds in accordance with the allocation, Penn Central commenced this proceeding to have the award confirmed “pursuant to CPLR §§7601 and 7510” and to have judgment entered upon it. Conrail cross-moved to dismiss on the grounds that the petition failed to state a cause of action and that the court lacked subject matter jurisdiction.
In support of the motion to dismiss Conrail contended that “the allocation panel’s determination is so patently defective that its enforcement * * * would be a gross travesty of justice”. It claimed that the “[flirst and foremost” defect was the “assumption” that the air rights commenced at a fixed point above the highest surface rail while actually the highest rail was located on a trestle 47 feet above the surface. Although the allegedly erroneous assumption was based on the agreed statement of facts, Conrail contended that its concession on this point was “only for the purpose of the allocation determination”, and was not binding beyond that proceeding. It urged that this error alone rendered the entire allocation determination totally inaccurate.
Conrail also contended that the allocation determination was defective because it does not comply with the AIA *126 standards “as was required by the parties”. It claimed that “[pjerhaps the most grievous” defect in this regard “is that the panel failed to present any rationale for its determination, which leaves Respondent without the means of ascertaining the extent to which the panel may have further disregarded other important AIA standards”. It then noted in detail that the factors cited in the report required calculations to be made in accordance with standards specified in the AIA rules and concluded that the appraisers’ “failure” to make any reference to the standards used in assessing the cited factors, indicated a failure to comply with the AIA standards.
Conrail also contended that the panel improperly relied upon a report submitted by petitioner in which the expert concluded that the area had great potential for development. Conrail noted that a newspaper article published a few days after the panel’s decision indicated that on a prior occasion that expert had predicted very little development in the area at least — and this was not noted by Conrail — “without government intervention”.
The trial court dismissed the proceeding in a brief memorandum concluding that this was not an arbitration but “an appraisal only” and that the courts lack the power to enter judgment upon an appraisal as if it were an arbitration, citing Matter of Hollander v Kessler (19 AD2d 445, affd 15 NY2d 586).
The Appellate Division reversed and confirmed the award (82 AD2d 208). The court stated (p 213): “The plain meaning of the agreement was to submit the entire controversy between the parties to impartial third parties for final resolution. In all respects, except for the use of the word ‘appraisal’, this constituted an arbitration agreement”. The court also found that the statutory formalities applicable to arbitration were either waived or substantially fulfilled. “In this view”, the court concluded “we need not concern ourselves with the application of CPLR 7601” relating to appraisal, valuation and related agreements (p 216).
Historically the courts have recognized a basic distinction between appraisal and arbitration. Although both contemplate a nonjudicial and informal resolution of a *127 dispute by a third party, the prevailing practice in appraisals is more informal and “entirely different [from the] procedure governing arbitration” (Matter of Delmar Box Co. [Aetna Ins. Co.], 309 NY 60, 67). Unless the parties have waived their rights, arbitrators are required to take an oath, hold hearings on notice to the parties, decide the matter only on the evidence submitted at the hearing and, if more than one arbitrator has been selected, all must attend the hearing (CPLR 7506; see, also, Matter of Delmar Box Co. [Aetna Ins. Co.], supra). This is not the accepted procedure in appraisals and appraisers are not required to observe these formalities (Matter of Delmar Box Co. [Aetna Ins. Co.], supra). We have also indicated in the past that arbitration generally resolves the whole controversy between the parties and results in confirmation and the entry of judgment on the award, while appraisal resolves only a valuation question leaving all other issues for resolution at a plenary trial (Matter of Delmar Box Co. [Aetna Ins. Co.], supra, p 63; but see Instructional Tel. Corp. v National Broadcasting Co., 45 AD2d 1004; CPLR 7503, subd [a]).
In most respects this case fits the typical appraisal pattern. The dispute between the parties related to the proportionate valuation of their respective rights in the property; they agreed to submit it to appraisers for resolution, and the proceedings were conducted with the informality customary with appraisers. What makes this case unusual is the fact that the valuation determination resolves the entire dispute between the parties, as is generally expected only in arbitrations.
There is, of course, no merit to Conrail’s contention that there are other issues which the parties reserved for a plenary trial “such as”, the point at which the air rights begin and the time within which they must be utilized to be preserved. These are not “other issues”. They are an integral part of the allocation question which the parties agreed to submit to the appraisal panel. Any reservation of these issues for future litigation would have rendered the appraisal meaningless. In fact Conrail has effectively conceded the point by claiming that an “erroneous” assumption concerning the height question destroyed the validity *128 of the appraisal. Nevertheless Conrail argues that its right to litigate these points after the appraisal was preserved in the initial letter agreement.
Although this initial proposal accepted by the petitioner stated that it did not constitute an admission of any facts, the parties subsequently submitted an agreed statement admitting the very facts Conrail claims are still a matter of dispute. A party who has formally admitted certain facts cannot, if dissatisfied with the outcome, avoid his stipulation by noting that at some earlier point in the dispute he had refused to make admissions. Conrail’s further contention that these admissions were made only for the purpose of the appraisal overlooks the fact that the purpose of the appraisal was to determine the proper allocation of the sales proceeds — the same ultimate issue Conrail now seeks to litigate. In short, the appraisal award resolved the entire dispute between the parties, and thus there are no issues left for a plenary trial.
This unusual circumstance, however, does not mean that the appraisal award was actually an arbitration award. It simply means that this is the apparently rare case in which the appraisal award actually does resolve the parties’ dispute in its entirety. The distinction is important because an award made in an appraisal proceeding, conducted in the informal manner accepted in such proceedings, should not be subject to challenge for failure to observe the formalities suited only to arbitrators (Matter of Delmar Box Co. [Aetna Ins. Co.], supra; see, also, Note, Scope of New York Arbitration Law, 43 Harv L Rev 809, 812). Nor should it be necessary for the proponent of an appraisal award to demonstrate waivers or substantial compliance with respect to formalities foreign to the accepted appraisal process.
The second question posed by this appraisal award is whether it can be confirmed in a special proceeding in view of the fact that the valuation determination encompasses the entire controversy. Conrail claims that prior decisions and the wording of the present statute governing appraisals (CPLR 7601) deny a court the power to do so in all *129 cases.[2] It is contended that the statute by its terms only permits a court to confirm an appraisal award when it has previously intervened in the proceeding by granting specific performance of the appraisal agreement or by directing that the parties proceed to arbitration. The argument is based on the assumption that the Legislature does not favor the informal methods employed by appraisers and is only willing to permit confirmation and the entry of judgment when the court “oversees the proceedings, and assures that due process safeguards are afforded to the parties”.
The legislative history, however, does not indicate any hostility or suspicion of the accepted practice in appraisals, or preference for the more formal procedures employed in arbitration. On the contrary, the drafters expressed a need to preserve the appraisal format distinct from arbitration. Their report states: “the procedures are really different and * * * the greater formality in arbitration ought not to be made compulsory for appraisal and evaluation proceedings” (NY Legis Doc, 1960, No. 20, pp 61, 64). Neither was the statute designed to restrict the court’s power to enforce appraisal agreements. In fact the drafters noted that it was intended to have the opposite effect of permitting the court to “choose from a wider range of remedies” than those previously employed in such proceedings {ibid., p 62). It was contemplated that under this statute, a court would have the option to (1) order specific performance of the appraisal agreement, a remedy not available at common law {ibid., p 62); (2) direct the parties to proceed to arbitration, the only sanction authorized by the prior statute but now considered a “last resort” {ibid., p 64); or (3) “exercise its equitable discretion” by adopting some other form of relief appropriate to the particular case, including remedies not specifically identified in the statute {ibid., p 62). *130 The report concludes: “There seems no reason why courts should not be entrusted with their traditional legal and equitable powers. Because they may not be suitable in some instances is no reason to abolish them in every instance” (ibid., p 65). Thus we have noted that this statute permits a court to confirm an appraisal in an appropriate case (Matter of Dimson [Elghanayan], 19 NY2d 316, 325).
It is evident from our prior decisions that there is no need to confirm the award in the typical case where valuation represents only part of a dispute or serves as a condition precedent to the exercise of other contractual rights which may also be in dispute (see, e.g., Matter of Delmar Box Co. [Aetna Ins. Co.], supra; Matter of Hollander v Kessler, 15 NY2d 586, supra). Indeed to require or permit a party to commence a special proceeding for the confirmation of a valuation determination when there are other issues to be resolved at a plenary trial, would only lead to additional litigation and delay, thus defeating the primary objective of the appraisal agreement. But when, as here, the only dispute between the parties concerns a question of valuation which they have agreed to submit to a panel of appraisers for a nonjudicial and expeditious determination there is no reason why the award should not be confirmed in a special proceeding and the matter finally resolved as the parties obviously intended when they made the agreement.
Finally, as noted, Conrail claims that defects in the appraisal award preclude confirmation. As a general rule under CPLR 7601, “a dissatisfied party who participated in ’the selection of an independent appraiser has no greater right to challenge the appraiser’s valuations than he would have to attack an award rendered by an arbitrator” (Matter of Dimson [Elghanayan), supra, p 325; cf. Gervant v New England Fire Ins. Co., 306 NY 393). None of the alleged defects would require setting aside the award under that standard.
The claimed error in computing the boundary for the surface rights was not an error but a stipulated fact binding on all participants. In addition factual errors do not ordinarily affect the validity of an award. Conrail’s belated *131 objection to the use of petitioner’s expert report, because the expert may have expressed a contrary opinion on some prior occasion, does not represent any defect in the proceedings and would not be considered error even in the more demanding judicial setting. With respect to the content of the panel’s report, it is sufficient to note that there was no showing that it is the accepted practice for appraisers to set forth every step in their calculations when confronted by such a short deadline, or even as a general rule.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order affirmed, with costs.

. The full text of the July, 1980 letter agreement is set forth in the Appellate Division decision (82 AD2d 208, 209-210).

. CPLR 7601 reads as follows: “A special proceeding may be commenced to specifically enforce an agreement, other than one contained in the standard fire insurance policy of the state, that a question of valuation, appraisal or other issue or controversy be determined by a person named or to be selected. The court may enforce such an agreement as if it were an arbitration agreement, in which case the proceeding shall be conducted as if brought under article seventy-five. Where there is a defense which would require dismissal of an action for breach of the agreement, the proceeding shall be dismissed.”