(March 21, 1985)

■ In the Matter of BUILTLAND PARTNERS, Respondent, v JACK LALANNE BILTMORE HEALTH SPA, INC., Appellant. — Judgment, Supreme Court, New York County (Tyler, J.), entered April 26, 1984, affirming the verified revised report of a court-appointed

appraiser and awarding petitioner-respondent the sum of $151,946.24, affirmed, with costs.

The legal history of this now-protracted litigation is fully set forth in the dissenting memorandum. We perceive no departure in the revised report of the appraiser from the direction given in this court's previous order dated April 12, 1983. (*See, Matter of Builtland Partners v LaLanne Biltmore Health Spa,* 93 AD2d 727.) Nor does the record disclose any basis for the conclusion that the appraiser did not act "honestly and in good faith, in the exercise of [his] wide discretion as to methods of procedure and sources of information" (*Rice v Ritz Assoc.,* 88 AD2d 513, 514).

As to the dissenting memorandum's view that the respondent should now be relegated to pursuing claims in a plenary action or by way of counterclaim in the appellant's present action, that contention was presented to the court in the prior appeal and there rejected. Concur — Sandler, Carro, Fein and Milonas, JJ.

Murphy, P. J., dissents in a memorandum as follows: Respondent instituted this proceeding pursuant to CPLR 7601 to compel specific performance of a lease provision calling for periodic reappraisals of the amount of electricity and steam usage by its tenant, the appellant, such amount to be charged as additional rent. The first reappraisal of the appellant's health spa premises was to have been made in the fifth year of the lease term which commenced on July 1, 1972. No such reappraisal "by a mutually satisfactory electrical engineer" was made. Respondent subsequently acquired the premises and unilaterally selected an engineer to conduct a reappraisal. A nonpayment summary proceeding was instituted based upon the reappraisal charges and later dismissed because of respondent's ex parte action in appointing the appraiser. A subsequent action resulted in the appointment by Special Term of the firm of Economides and Goldberg as appraisers for the period commencing September 1978. This court vacated a judgment of $196,197.86 entered pursuant to Economides and Goldberg's reappraisal and directed the firm to revise their report, " 'so as to cover the period from August 1, 1978, based upon usage and rates prevailing as of June 30, 1977' " (93 AD2d 727, 728). The parties were given the opportunity (p 728) to move " 'to confirm, modify or vacate the appraisal' ".

The final reappraisal found the combined appropriate charges to be $171,673.90. Judgment in favor of respondent was entered in the amount of $151,946.24, including interest and reflecting a reduction for rental payments for electricity and steam from September 1978 through April 1982 in the sum of $60,720.

Appellant bitterly contests the factual bases used in determining the additional charges. Although our direction to the engi-

neering firm was to make its calculations " 'based upon usage and rates prevailing as of June 30, 1977' " (*supra,* p 728), the energy cost appraisal merely estimated electricity and steam consumption along with usage factors for lighting and other equipment. Hours of operation were estimated as well. Operating personnel of the appellant were apparently not consulted as to actual usage figures, statements to the contrary in the report notwithstanding. In fact, the estimates of usage made by Economides and Goldberg exceed the findings of actual usage made by the respondent's prior appraiser. Without exhausting appellant's rebuttal of the presumptions underlying the report, the energy cost appraisal overestimated the hours the health spa was open daily, the wattage of the electrical fixtures, the number of washers and dryers on the premises, cleaning hours, whirlpool pump use, and air conditioning and heating utilization. Appellant's papers clearly raise factual issues regarding the accuracy of the appraisal.

Appraisal proceedings lack the formal requirements of arbitration such as the oath and notice provisions of CPLR 7506. Appraisers do not act in the judicial capacity of arbitrators and may conduct an ex parte investigation. Arbitrators must act only upon the proof submitted at the hearing. (*See, Matter of Penn Cent. Corp.* [*Consolidated Rail Corp.*], 56 NY2d 120; *see also,* 5 NY Jur 2d, Arbitration and Award, § 2.) While noting the fundamental differences between appraisal and arbitration, courts in recent years have, in special circumstances, treated the two synonymously. In these cases an appraiser's report has been equated with an arbitrator's award and the grounds for vacatur, e.g., fraud, bias, bad faith, have been similarly applied. This is not a general rule however, and applies only in those situations where all of the disputes between the parties can be resolved through appraisal. In other cases, "appraisal resolves only a valuation question leaving all other issues for resolution at a plenary trial" (*Matter of Penn Cent. Corp.* [*Consolidated Rail Corp.*], *supra,* at p 127). Here, the parties are embroiled in litigation arising from the destruction of appellant's premises in the course of respondent's renovation of the Biltmore Hotel. Appellant was forced to vacate on April 27, 1982 and shortly thereafter commenced an action against the respondent alleging violations of its lease. Under these circumstances appellant's motion to vacate the appraiser's report should have been granted and the respondent relegated to pursuing his claims in a plenary action or by way of counterclaim or setoff in the appellant's action. Here, not only has appellant raised legitimate questions concerning the report, but there exists an action between the parties at which these questions can be addressed.

Respondent relies upon three cases to support its position: *Matter of Penn Cent. Corp. (supra)*, *Rice v Ritz Assoc.* (88 AD2d 513), and *Olympia & York 2 Broadway Co. v Produce Exch. Realty Trust* (93 AD2d 465). In each of these cases, however, the parties had given their unqualified assent to the method of appraisal followed. In *Matter of Penn Cent. Corp.*, the parties had submitted the question of the allocation of the purchase price to the appraisal panel, with guidelines and stipulations drawn by the parties. In the *Rice v Ritz* and *Olympia & York* cases, each party selected its own appraiser who, in the absence of agreement, chose a third. Here the appellant, which has been in litigation with the petitioner since 1979, has never assented to any appraiser nor has there been any mutual agreement between the parties to an appraiser as contemplated by the lease. To reduce Economides and Goldberg's informal report to a judgment requiring a showing of fraud, bias or bad faith for vacatur places an unduly high burden upon appellant, which has demonstrated more than sufficient grounds to doubt the accuracy of the report.

Accordingly, I would vacate the judgment entered April 26, 1984, deny respondent's motion to confirm and grant appellant's motion to vacate the report of Economides and Goldberg.