**FERNDALE CORPORATION, Plaintiff,**

v.

**SCHULMAN URBAN DEVELOPMENT ASSOCIATES, Schulman Master Limited Partnership I, Schulman Management Corporation, Lowell Schulman, Robert Schulman, H. Guy Leibler, Douglas Ramsey, John Doe, and Richard Doe, Defendants.**

**SCHULMAN MASTER LIMITED PARTNERSHIP I, Plaintiff,**

v.

**FERNDALE CORPORATION, Defendant.**

**90 Civ. 1483 (GLG), 90 Civ. 3248 (GLG).**

United States District Court, S.D. New York.

Nov. 1, 1990.

Weingrad & Weingrad, P.C., New York City (Stephen A. Weingrad, of counsel), for Ferndale Corp.

Willkie Farr & Gallagher, New York City (Benito Romano, Sharon L. Schneier, of counsel), for Schulman Urban Development Associates, Schulman Master Ltd. Partnership I, Schulman Management Corp., Lo-

well Schulman, Robert Schulman, H. Guy Leibler, Douglas Ramsey, John Doe, and Richard Doe.

## OPINION

GOETTEL, District Judge:

### I. FACTS

Schulman Urban Development Associates, whose successor in interest is Schulman Master Limited Partnership I,[1] entered into a commercial lease agreement with Ferndale Corporation ("Ferndale") on March 31, 1984. This contract provided that Ferndale would lease a portion of the third floor of a commercial building located at 170 Hamilton Avenue, White Plains, New York, for approximately a ten-year term. The lease's payment provisions provided for a set monthly rent, plus a percentage of certain enumerated costs of operating the premises. The lease stated that the tenant could request documentation from the landlord as to any of these additional "costs of operation." Moreover, to the extent any disagreement over these costs arose, either party could seek a ruling by an independent accountant/arbitrator appointed by the Westchester County Bar Association.[2]

In December 1986, Ferndale received one such operating costs invoice. Ferndale wrote to Schulman later that month complaining about the invoice and requested documentation regarding the expenses listed. At that time, Ferndale actually paid the amount due pursuant to the invoice, but specifically reserved its rights to challenge the bill.[3] Schulman responded to the letter by outlining the various charges, but allegedly failed to provide Ferndale with any actual documentation. Unsatisfied with Schulman's response, on April 8, 1987 Ferndale again wrote to Schulman requesting documentation for review by an independent certified public accountant ("CPA") whom Ferndale would pay. In addition, Ferndale stated that, if necessary, the explicit lease procedures for the appointment of an independent CPA/arbitrator would be implemented.

The parties then engaged in a series of negotiations in an effort to settle this dispute. Finally, in approximately December 1988, it appears that Barry Steinfink, a CPA hired by Ferndale, was permitted access to Schulman's records to conduct an inquiry into the invoices presented to Ferndale.[4] Steinfink's inquiry continued during 1989. On October 18, 1989, however,

1. We will refer to all the defendant parties in the Ferndale action simply as "Schulman" or the "Schulman defendants" since they have common interests and are represented by the same counsel.

2. The relevant portion of the lease states as follows:

   Every statement furnished by Landlord ... shall be conclusive and binding upon Tenant unless (i) within thirty (30) days after the receipt of such statement Tenant shall notify Landlord that it disputes correctness of the statement ..., and (ii) if such dispute shall not have been settled by agreement within thirty (30) days ... the dispute shall have been submitted within that time to an independent certified public accountant chosen by Landlord and Tenant or failing agreement as to such accountant, either party may request the ... Westchester County Bar Association to so choose such accountant, whose decision ... shall be made within twenty (20) days of such submission and whose decision shall be final and binding on the parties.... Landlord shall promptly submit to Tenant copies of backup documentation reasonably neces-

   sary to confirm Costs of Operation and reasonably and specifically requested by Tenant. Lease § 7.02(D).

3. This payment allegedly covered operating costs for the period between July 1, 1985 and June 30, 1986. Ferndale claims that it made an earlier payment on December 31, 1985 for the period covering January 1, 1985 through June 30, 1985. The complaint does not specifically allege that either of these payments was made, but rather, Ferndale first refers to them in response to Schulman's motion. Ferndale Memo. in Opp. at 2. It is unclear how frequently Schulman sent invoices covering operating costs during this time or why Ferndale's payments were permitted to cover such extensive periods. Ferndale does claim, however, that after January 1987 invoices covering operating costs were received monthly, although it admits that no payments were made pursuant to these subsequent invoices. Thus, apparently only two payments were made in response to Schulman's operating costs invoices.

4. Although Ferndale was paying Steinfink to conduct the inquiry, he was not a Ferndale employee.

Schulman wrote to Ferndale explaining that it would no longer permit Steinfink access to its documents and that it was planning to implement the lease's provisions for appointment of an independent CPA/arbitrator. Thereafter, on November 3, 1989, Ferndale informed Schulman that it considered arbitration to be inappropriate since the lease provided that an arbitrator would only be appointed by the Westchester County Bar Association if the parties could not agree on a CPA. Since the parties had allegedly agreed that Steinfink could conduct the audit, which had actually been proceeding for almost a year, Ferndale argued that he should be allowed to complete the investigation that allegedly had been thwarted because of Schulman's failure to provide all the necessary documents. Alternatively, we note, Ferndale suggested that Schulman had waived any right to arbitration by failing to acquiesce when Ferndale initially requested arbitration.

Notwithstanding Ferndale's contentions, Robert Rimberg, a CPA, was appointed by the Westchester County Bar Association to arbitrate the dispute. On March 9, 1990, after inspecting Schulman's books, Rimberg issued an award of approximately $40,000 in favor of Schulman. Ferndale did not participate in the hearing conducted by Rimberg even though it clearly had notice of the proceedings. Instead, Ferndale continued to alternatively argue that Schulman had waived its right to arbitration and that Steinfink, if anyone, was the CPA who was to conduct the inquiry. Shortly after the award was issued, Schulman wrote to Rimberg requesting an increase in the award to approximately $85,000, contending that Rimberg had miscalculated the lease's penalty provisions. Rimberg denied this request.

Before Rimberg had rendered his initial decision, however, Ferndale sued the Schulman defendants, alleging that they had violated the federal Racketeer Influenced and Corrupt Organizations ("RICO") statute. 18 U.S.C. §§ 1961–1968 (1988). Specifical-

ly, Ferndale alleged that defendants engaged in a scheme to defraud plaintiff and other tenants out of significant funds through its "costs of operation" clauses and that defendants used both mail and wire fraud to perpetrate this scheme. Plaintiff also asserts causes of action based on state law theories of fraud, rescission, breach of contract, and tortious interference with contract.

Thereafter, Schulman petitioned the Supreme Court of the State of New York, County of Westchester, pursuant to articles 75 and 76 of the Civil Practice Law and Rules ("CPLR"), for a judgment confirming the arbitration award, in part, and modifying it, in part, to reflect the alleged deficiency. Ferndale then removed this second proceeding to federal court and it was assigned to us as a related case. It appears that on March 31, 1990, Ferndale abandoned the leased premises and moved its offices to New Jersey.[5] Since Ferndale remained incorporated in Delaware, the case was removed on the basis of diversity jurisdiction.

## II. DISCUSSION

We now have motions before us in each of the two actions and will address them in turn.

### A. Ferndale Action

The Schulman defendants have moved to dismiss Ferndale's RICO action on a number of grounds. First, they contend that plaintiff has no standing to assert a RICO action because it has not been injured by reason of the alleged racketeering predicate acts. Moreover, defendants argue that plaintiff has not adequately alleged a "pattern of racketeering activity" as recently interpreted by the United States Supreme Court. Finally, defendants claim that Ferndale has failed to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b). If the RICO claim is dismissed, defendants suggest that we

---

5. Although Ferndale did not abandon the premises covered by the lease until 1990, a letter dated March 11, 1986 from Ferndale to Schul-

man stated that the new address for Ferndale was 258 East Saddle River Road, Saddle River, New Jersey.

should also dismiss the pendent state claims. Alternatively, defendants suggest that this action should be stayed pending resolution of the articles 75 and 76 proceedings.[6]

Plaintiff responds to these arguments as follows. With respect to the standing argument, Ferndale contends that it relied on the invoices and actually made two payments, even though these specific payments are not alleged in the complaint. Moreover, plaintiff claims that a "pattern of racketeering activity" was pled since the complaint alleges numerous invoices being mailed to hundreds of tenants, including plaintiff, and that these mailings occurred over a period of time and would continue to occur until the leases expired or the tenants were evicted. Finally, with respect to the rule 9(b) argument, plaintiff alleges that it has pled fraud to the extent possible, noting that most of the relevant documents are in defendants' hands. Plaintiff argues that defendants are on notice of its claims and that discovery will flesh out the who, what, where, when, and how of the frauds to the extent these facts have not been alleged.

The section of the RICO statute at issue states that:

It shall be unlawful for any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1988). The statute goes on to state that a pattern of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5) (1988). This pattern requirement has been the subject of persistent litigation and, most recently, the Supreme Court stated that not only must a plaintiff establish at least two predicate acts, but also "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989).[7] Two such so-called predicate acts are mail fraud and wire fraud, as codified at title 18 United States Code, sections 1341 and 1343, respectively. In the case at bar, Ferndale alleges that Schulman perpetrated both mail and wire frauds in an effort to collect operating costs pursuant to the lease's provisions.

▪ Schulman's first argument is that Ferndale has no standing to assert a RICO claim. The statute only recognizes a private remedy in favor of "[a] person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1988). Thus, in a situation such as the case at bar, plaintiff must show that the defendants conducted an enterprise through a pattern of racketeering activity and that it suffered injury as a result of the activities constituting such pattern. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985). Schulman claims that Ferndale cannot assert a claim under section 1962 because the complaint fails to allege that any payments were made in response to the invoices received. Thus, Schulman argues, there is no factual support for the contention that Ferndale has been "injured in [its] business or property" due to the alleged RICO violations. While it is true that the complaint does not allege any specific payments by Ferndale, it does state that "[d]efendants caused and attempted to cause the enterprise to receive payment from [p]laintiff and hundreds of other similarly situated Tenants for Lease charges to which it was not entitled." Complaint ¶ 36. Even if this was insufficient, it could easily be cured in an amended complaint since papers submitted by Ferndale in response to this motion sug-

---

6. Following oral argument, we denied Schulman's application to stay discovery in the two actions pending our resolution of the instant motions.

7. Unfortunately, it appears that as much confusion exists in ascertaining whether a "pattern" exists after *H.J. Inc.* as was evident before the Court's ruling.

gest that two payments actually were made.

■ There is, however, a more pressing problem faced by Ferndale on this issue. The statute specifically requires an injury "by reason of" a RICO violation and "[t]he phrase 'by reason of' requires that there be a causal connection between the prohibited conduct and plaintiff's injury." *Norman v. Niagra Mohawk Power Corp.*, 873 F.2d 634, 636 (2d Cir.1989). In addition, the Second Circuit recently recognized that a party asserting a RICO claim based on mail fraud predicate acts must demonstrate reliance on the misrepresentations and injury by virtue of such misrepresentations. *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2d Cir.1990); *see Shaw v. Rolex Watch U.S.A., Inc.*, 726 F.Supp. 969, 972 (S.D.N.Y.1989).[8]

■ On a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint's claims are taken "at face value," *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and dismissal is warranted only if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In the instant action, plaintiff's complaint must be dismissed as it fails to satisfy this requirement. Even assuming plaintiff had alleged making two payments, the facts alleged only suggest reliance on the alleged mail fraud in making the first payment. As to the second payment, which was made in December 1986, Ferndale clearly admits that it immediately began challenging this invoice. First, Ferndale demanded backup documentation from Schulman as permitted by the lease. Complaint ¶ 11. Moreover, the payment was accompanied by an express reservation of

rights and a statement that the payment was not a waiver of the right to arbitration. Thus, the second payment was made with, at a minimum, speculation that the invoice was erroneous. Thus, there is no causal connection between this payment and any injury plaintiff suffered. Plaintiff's injury was caused by its own failure to defer payment until further documentation could be received. *See County of Suffolk*, 907 F.2d at 1312 (" '[w]here the recipient knows the true facts that are misrepresented ..., he cannot be found to rely on it' ") (quoting 2 F. Harper, F. James, O. Gray, *The Law of Torts* § 7.13, at 465 (2d ed. 1986)); *Shaw*, 726 F.Supp. at 973 (false statements must deceive and this deception must cause injury). Plaintiff's counsel's suggestion that by making payment plaintiff was exhibiting "good faith" may be true, but this does not obviate the fact that Ferndale was aware of the errors when it made the second payment. To the extent that the lease provided that Ferndale had to make payment and thereafter challenge the invoice, *see* Lease § 7.02(D), plaintiff, of course, retains the right to assert, as it has done, a claim for breach of contract. A racketeering predicate act, however, is a different story.

Additionally, we recognize that there is no suggestion that any payments were made after this second one. Instead, Ferndale received and ignored these invoices, just as it could have done upon receiving the second invoice. Thus, no injury could possibly arise from any of the invoices mailed after this second payment since no further payments were made, notwithstanding the fact that Ferndale remained on the premises until March 31, 1990. *See Howe v. Reader's Digest Ass'n*, 686 F.Supp. 461, 465–66 (S.D.N.Y.1988) (no injury because plaintiff never made any pay-

---

**8.** To the extent plaintiff's RICO claims rest on wire fraud, the same standard would apply. *Cf. Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). Therefore, we need not separately address any purported wire fraud violations. In this regard, however, we note that the complaint does not allege any facts suggesting the existence of wire

fraud and plaintiff merely makes a conclusory statement that "[d]efendants did transmit or cause to be transmitted by means of wire communications various writings and verbal communications ... in furtherance of and pursuant to and for the purpose of executing [its] unlawful schemes." Complaint ¶ 30.

ments in response to defendant's fraudulent scheme).[9]

Therefore, we find that plaintiff does not have standing under the RICO statute and this claim must be dismissed.[10] Since dismissal of this claim divests us of a basis for federal question jurisdiction, we will also dismiss the pendent state claims that have been asserted. Plaintiff is given twenty days, however, to replead. We recognize that even if plaintiff cannot replead its RICO claim, the state law claims may return before us because plaintiff apparently can now assert diversity jurisdiction in light of its move to New Jersey.

### B. *Schulman Action*

We now turn to Ferndale's motion to vacate the arbitration award.[11] Ferndale first argues that there was no general agreement to arbitrate, but rather, that arbitration was only appropriate if the parties first failed to agree upon a CPA to conduct an audit. Alternatively, Ferndale claims that Schulman failed to satisfy a condition precedent to arbitration, to wit, Schulman allegedly failed to supply Ferndale with documentation to support the invoices it mailed. Moreover, Ferndale contends that Schulman waived its right to arbitration because Schulman refused to assent to Ferndale's two requests for arbitration and because the lease's thirty-day window for seeking arbitration expired prior to Schulman's demand. Ferndale argues that Schulman's failure to allow Steinfink to continue his audit also constitutes a waiver of the arbitration clause. Finally, Ferndale argues that the arbitration itself was tainted because, *inter alia*, the hearing was conducted by Rimberg in Ferndale's absence.

■ Most of the arguments raised by Ferndale are untimely in light of the rules governing arbitration proceedings.[12] Once a party receives notice of his adversary's intention to arbitrate, the proper procedure is to make an application by special proceeding to stay arbitration. N.Y.Civ. Prac.L. & R. 7502(a) (McKinney Supp.1990); *see* N.Y.Civ.Prac.L. & R. 7503, commentary at 366 (McKinney 1980); *D.M.C. Constr. Corp. v. A. Leo Nash Steel Corp.*, 70 A.D.2d 635, 416 N.Y.S.2d 649, 652 (2d Dep't 1979), *appeal dismissed*, 49 N.Y.2d 1040, 407 N.E.2d 480, 429 N.Y.S.2d 636 (1980).[13]

---

9. Ferndale's argument that the threat of eviction establishes a further injury is also unavailing. First, Ferndale was never evicted, but instead, actually abandoned the premises. Moreover, for the period when Ferndale remained on the premises, if anyone was injured it probably was Schulman because Ferndale ceased paying any operating costs (it continued to pay the fixed rent) even though some costs obviously were incurred on its behalf.

10. In the same light, we note that plaintiff's complaint fails to satisfy the rule 9(b) requirements of pleading fraud with particularity. Since rule 9(b) is implicated when fraud is a predicate act in a RICO claim, a party must allege, *inter alia*, what the defendant obtained as a result of the fraud and how it was misled. *Conan Properties v. Mattel, Inc.*, 619 F.Supp. 1167, 1172 (S.D.N.Y.1985) (quoting *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978)). Plaintiff has not alleged what Schulman obtained as a consequence of sending the invoices that Ferndale never paid and, even though Ferndale made the second payment referred to above, there is no factual support for the proposition that plaintiff was misled by the alleged fraud. This second payment was made with full recognition that something allegedly was awry in the calculation of operation costs.

*See James A. Jennings Co., Inc. v. Calgi*, No. 85 Civ. 8787, slip op. at 5, 1986 WL 10721 (S.D.N.Y. Sept. 22, 1986).

11. As previously noted, Schulman petitioned the Supreme Court of the State of New York, County of Westchester, for confirmation of the arbitration award, in part, and modification, in part, pursuant to articles 75 and 76 of the CPLR. Before the merits of the application were resolved, however, Ferndale removed the action to this court based on diversity jurisdiction.

12. In a diversity case, a federal court must apply state law governing arbitration if the Federal Arbitration Act is not applicable. *See Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 202, 205, 76 S.Ct. 273, 275, 277, 100 L.Ed. 199 (1956). In the case at bar, the parties agree that the federal act is not implicated and that New York's laws governing arbitration are controlling.

13. We recognize that Schulman's action was brought pursuant to both articles 75 and 76 of the CPLR. Our resolution of the pending motion focuses on article 75, however, since article 76, which deals with appraisals rather than arbitration, states that "[t]he court may enforce such an agreement [to seek an appraisal] as if it

In this case, Schulman's attorney informed Ferndale in October 1989 that it was planning to seek arbitration. Although Ferndale clearly voiced its objection to having an arbitrator appointed, this is not the equivalent of instituting a special proceeding to stay arbitration as the statute requires and, thus, the arbitration properly proceeded.

■■■ Thereafter, once an arbitrator has made a ruling, an aggrieved party's remedy is to seek to vacate or modify the award. The statute distinguishes between instances when the challenging party received notice of his adversary's intention to arbitrate, but failed to participate, and when it did not receive such notice. The following are the grounds for vacating an award when a party has received notice:

(i) corruption, fraud or misconduct in procuring the award; or

(ii) partiality of an arbitrator appointed as a neutral ...; or

(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final

and definite award upon the subject matter was not made; or

(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection.

N.Y.Civ.Prac.L. & R. 7511(b)(1) (McKinney 1980). On the other hand, if the party seeking to vacate an award was not given notice of an intention to arbitrate, it can raise these same arguments in addition to claiming that a valid arbitration agreement was never made; the arbitration agreement was not complied with; or the arbitrated claim was barred by the statute of limitations. N.Y.Civ.Prac.L. & R. 7511(b)(2) (McKinney 1980). The absence of an agreement to arbitrate, a failure to comply with conditions precedent, and a waiver of a right to arbitrate, which are the principal grounds Ferndale raises for vacating Rimberg's award, cannot be raised at this stage because it is undeniable that Ferndale had notice of Schulman's intention to arbitrate.[14] Ferndale's last argument for vacating Rimberg's award is that the arbitration hearing was tainted because

were an arbitration agreement, in which case the proceeding shall be conducted as if brought under article seventy-five." N.Y.Civ.Prac.L. & R. 7601 (McKinney 1980); *see also Penn Central Corp. v. Consolidated Rail Corp.,* 56 N.Y.2d 120, 436 N.E.2d 512, 517, 451 N.Y.S.2d 62, 68 (1982) (where appraisal resolves entire dispute, it can be confirmed by special proceeding just as an arbitration award).

**14.** One issue the parties failed to raise on their own was the question of whether Schulman's service of a technically defective notice of intention to arbitrate emasculates its notice giving effect. Specifically, CPLR 7503(c) states that a notice of intention to arbitrate shall state, *inter alia,* "that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time." N.Y.Civ.Prac.L. & R. 7503(c) (McKinney 1980). Clearly, the notice served by Schulman's attorney did not comply with these requirements. The question then becomes whether CPLR 7511(b), which precludes a party from raising certain defenses if he "was served with a notice of intention to arbitrate," requires the notice to be in the exact form required by CPLR 7503(c). We conclude that it does not. CPLR 7503(c)

creates a means by which a party can create a twenty day limitations period during which his adversary must either move to stay arbitration or waive certain defenses. In this case, by failing to include the necessary language in its notice, Schulman would not have been in a position to object if after the twenty days, but prior to arbitration, Ferndale sought a stay of arbitration based on one of the waivable grounds. *See Filippazzo v. Garden State Brickface Co.,* 120 A.D.2d 663, 502 N.Y.S.2d 258, 259 (2d Dep't 1986); *see also Initial Trends, Inc. v. Campus Outfitters, Inc.,* 58 N.Y.2d 896, 447 N.E.2d 48, 48, 460 N.Y.S.2d 500, 500 (1983) ("[t]he consequence of failure to strictly comply with the provisions of CPLR 7503[c] in serving a demand for arbitration is to toll the time limit on an application to stay arbitration"). Once the arbitration has concluded, however, CPLR 7503, which relates to compelling or staying arbitration, is no longer implicated. *But see Central Gen. Hosp. v. Local 1115 Nursing Home,* 61 Misc.2d 447, 305 N.Y.S.2d 948, 950 (Sup.Ct. Nassau County 1969). To hold otherwise would allow a party who has received actual, but technically deficient, notice of an intention to arbitrate to ignore the notice and permit the arbitration to proceed, thereafter raising any and all objections in opposition to his adversary's motion to confirm the arbitration award. This approach cannot be countenanced.

the hearing was conducted at Schulman's offices in Ferndale's absence and because the record is unclear as to the evidence Rimberg reviewed in reaching his decision. We do not see how these bald assertions fit within one of the permissible criteria for vacating an arbitrator's award at this stage. Ferndale knew of the arbitration and easily could have participated in the proceedings or moved to stay the arbitration. Therefore, we must deny Ferndale's motion to vacate the arbitration award.

█ Having denied Ferndale's motion to vacate, we recognize that CPLR 7511(e) states that we should now confirm the arbitration award. N.Y.Civ.Prac.L. & R. 7511(e) (McKinney 1980). Consequently, to the extent Schulman's petition seeks partial confirmation of Rimberg's award, the award is confirmed. However, the original petition filed by Schulman also seeks modification of the award, in part, based on Rimberg's purported miscalculation of late payment fees. Since nothing has been presented to us regarding any of the actual calculations made by Rimberg, we cannot possibly modify the award at this time and must await further submissions by the parties.

## III. CONCLUSION

The motion by Schulman to dismiss the Ferndale action is granted, but Ferndale is allowed twenty days leave to replead. Ferndale's motion to vacate the arbitration award in the Schulman action is denied. Based on these rulings, we need not consider either Schulman's motion to stay the Ferndale action pending resolution of the articles 75 and 76 proceedings or Ferndale's motion to consolidate the two actions.

SO ORDERED.