**LUXOTTICA GROUP, S.p.A, Petitioner,**

v.

**BAUSCH & LOMB INCORPORATED Respondent.**

**No. 00 Civ. 2836(WHP).**

United States District Court, S.D. New York.

March 30, 2001.

Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York City, for Petitioner.

Christopher M. Mason, Nixon Peabody LLP, New York City, for Respondent.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Luxottica Group S.p.A. ("Luxottica") moves for an order to compel Bausch & Lomb, Incorporated ("B & L") to submit disputes concerning the purchase of a business to an independent accountant for an arbitration or appraisal. B & L asks this Court to deny Luxottica's petition and requests further discovery. For the reasons stated below, Luxottica's motion is granted and B & L's application is denied.

## BACKGROUND

In 1998, B & L, a New York corporation, began to explore the possibility of selling its worldwide non-prescription sunglass business. (*See* Declaration of Alan H. Farnsworth ("Farnsworth Dec.") ¶ 3.) To assist potential investors in evaluating its sunglass business, B & L compiled due diligence materials describing its financial and management histories, drafted a model purchase agreement, and prepared a Baseline Net Operating Assets Statement ("BNOAS") which valued the sunglass business's assets as of December 26, 1998 ("Baseline Date") at $397,125,000. (Farnsworth Dec. ¶¶ 6, 9; Farnsworth Dec., Ex. D.) B & L disclosed the accounting principles ("Accounting Principles") used to prepare the BNOAS in their due diligence materials. (Farnsworth Dec. ¶ 15.)

On April 28, 1999, after reviewing the due diligence materials, Luxottica, an Italian corporation, agreed to purchase B & L's sunglass business for approximately $600 million. (Farnsworth Dec. ¶ 14.) Since this price was derived partly from the BNOAS, the parties devised a procedure in the purchase agreement ("Agreement") authorizing post-closing price adjustments in the event that the sale assets changed between the Baseline Date and the closing date. (Farnsworth Dec. ¶ 16.)

Section 2.5 of the Agreement, titled "Post-Closing Adjustment", provided that after a joint audit of the inventory, B & L would provide Luxottica with a Closing Net Operating Assets Statement ("CNOAS") valuing its assets as of the closing date. (Agreement §§ 2.5(a)—(b).) Within thirty days of receipt of the CNOAS, Luxottica would, if it found that any part of the CNOAS was "incorrect or [had] not been prepared in accordance with the Accounting Principles ... inform [B & L] in writing ... setting forth a specific description of the basis of the [Luxottica's] Objection, and the adjustments to the [CNOAS]." (Agreement § 2.5(c).) Thereafter, B & L had thirty days to respond to Luxottica's objections (the "Response Period"). (Agreement § 2.5(c).) If the parties were unable to resolve their dispute within thirty days following the Response Period, they agreed to submit unresolved items to a U.S. office of Arthur Andersen LLP or other internationally recognized firm of independent public accountants. The Agreement provided the following mandate:

> (the "CPA Firm") ... shall, acting as experts in accounting and not as arbitrators, determine on the basis of the Accounting Principles, whether and to what extent, if any, the [CNOAS] requires adjustment. The CPA Firm's review shall be limited to the items raised in [Luxottica's] Objection ... and no adjustment shall be made unless the CPA Firm determines that the information used to prepare the [CNOAS] is incorrect or ... [was] not prepared in accordance with the Accounting Principles.... The CPA Firm's determina-

tion shall be conclusive and binding upon the Buyer and Seller.

(Agreement § 2.5(c) ("Expert Accountant Procedure").)

The sale of B & L's sunglass business closed on June 25, 1999. (Farnsworth Dec. ¶ 24.) Thereafter, B & L delivered to Luxottica the CNOAS listing the value of the sunglass business assets as $415,659,000 at the closing date. (Farnsworth Dec. ¶ 24; Farnsworth Dec., Ex. D.) This figure represented an $18,534,000 appreciation of the sunglass business's operating assets from the Baseline Date.

On November 19, 1999, Luxottica advised B & L that it sought "indemnification ... in the amount of $80.758 million on the basis of B & L's breaches of the representations and warranties contained in sections 4.6 [financial information warranty] and 4.9 [inventory warranty] of the Agreement." (Farnsworth Dec., Ex. C.) This claim reflected $99,838,000 in damages claimed under the warranties less a deductible of "three percent (3%) of the Purchase Price," or $19,800,000, as required under section 10.4(a). (Farnsworth Dec., Ex. C.)

On December 1, 1999, B & L demanded $17,231,000 for the appreciation after taxes of the sunglass business's assets from the Baseline Date to the June 25, 1999 closing date. On December 2, 1999,[1] Luxottica informed B & L that it had thirty-two separate objections to the CNOAS's calculations. The parties resolved twenty-three objections and Luxottica withdrew one other. (*See* Farnsworth Dec. ¶ 29; Farnsworth Dec. Ex. F.) The remaining eight objections to proposed adjustments totaled

---

1. The parties dispute when Luxottica notified B & L of its objections. Luxottica claims that it notified B & L of its objections on November 19, 1999. (*See* Pet. for an Order Compelling Arbitration or Appraisal, Ex. D.) B & L claims that it did not receive Luxottica's no- tice, and did not learn of Luxottica's objections until December 2, 1999, two days after the Response Period. (Farnsworth Dec. ¶ 28.) B & L's acceptance of Luxottica objections rendered this point moot.

approximately $81 million. The disputed objections are:

Objection 3: Failure to record adequate allowance for gross margins on sales exchange returns ($7,250,000);

Objection 5: Failure to write off inventory assigned to Omega Labs (U.S.) ($22,000);

Objection 7: Failure to provide an adequate allowance for excess and obsolete inventories ($68,956,000);

Objection 10: Failure to eliminate prepaid insurance whose benefit was retained by B & L (refunds on cancellations by B & L) ($299,000);

Objection 15: Failure to accrue loss in connection with minimum royalty obligation to Porsche ($4,218,000);

Objection 16: Failure to accrue liability for pedimentos (import/export) resulting from a lack of documentation related to capital assets (Mexico) ($250,000);

Objection 24: Failure to record adequate allowance for warranty obligations ($858,000);

Objection 28: Failure to accrue environmental liabilities for the San Antonio facility (US) ($3,555,000).

(*See* Farnsworth Decl. Ex. F.) B & L advised Luxottica that it viewed these objections as claims for breach of the Agreement's warranties and therefore not subject to the purchase price adjustment procedure set forth in section 2.5.

On April 12, 2000, Luxottica petitioned this Court to compel B & L to submit the eight disputed objections to a CPA Firm as contemplated by section 2.5 of the Agreement pursuant to 9 U.S.C. § 4, N.Y. CPLR § 7501, or N.Y. CPLR § 7601.

*DISCUSSION*

1. *Section 2.5 Applies to this Dispute*

■ B & L argues that "whatever the Expert Accountant Procedure may be, it does not cover the Eight Disputed Objections" because they do not claim that the CNOAS is "incorrect" or "has not been prepared in accordance with the Accounting Principles." (Mem. in Opp. at 16.) B & L acknowledges that any objection claiming miscalculations or failure to abide by the Accounting Principles would be subject to section 2.5(c). (Mem. in Opp. at 17, n. 20.; Farnsworth Decl. ¶ 32.) According to B & L, Luxottica's objections attack the accounting methods used to prepare the BNOAS and the CNOAS. (Farnsworth Decl. ¶ 34.) "[I]t is a claim that the way in which B & L has accounted for the inventory purchased by Luxottica, a way which was fully disclosed to Luxottica, is wrong." (Farnsworth Decl. ¶ 34.)

However, the objections do not pertain to the Accounting Principles. Rather, they assert specific instances where B & L failed to accrue losses or liabilities, eliminate an asset retained by B & L, or record sufficient allowances for returned or obsolete inventory and warranty obligations. (*See* Pet., Ex. D.) Luxottica simply claims that B & L's failure to provide for these losses, liabilities, and allowances caused incorrect values to be recorded on the CNOAS. Section 2.5(c) states unequivocally that disputes over CNOAS valuations shall be submitted to the CPA Firm who shall "determine on the basis of the Accounting Principles whether and to what extent, if any, the [CNOAS] requires adjustment."

This Court finds that section 2.5(c) of the Agreement sets forth in clear and unambiguous language that the Expert Accountant Procedure applies to Luxottica's eight objections claiming incorrectly recorded values on the CNOAS. According-

ly, further discovery is not necessary for the Court to construe the Agreement. *Mfrs. Hanover Trust Co. v. Jayhawk Assocs.*, 766 F.Supp. 124, 127 (S.D.N.Y.1991) (application for further discovery denied when the contract is unambiguous); *Kashfi v. Phibro–Salomon, Inc.*, 628 F.Supp. 727, 736 (S.D.N.Y.1986) (further discovery is "pointless" where the contract is unambiguous); *see, e.g., Young v. Liberty Mut. Ins. Co.* No. 96 Civ. 1189, 1999 WL 301688 at *5 (D.Conn. Feb. 16, 1999) (discovery granted when extrinsic evidence was necessary to interpret contract language); *Nuclear Fuel Servs., Inc. v. N.Y. State Energy Research & Dev. Auth.*, No 87 Civ. 1160, 1989 WL 132027 at *4 (W.D.N.Y. Nov. 1, 1989) (no discovery warranted when the contractual language is clear and unambiguous).

2. *Section 2.5 is Enforceable under N.Y. CPLR § 7601*

■ The parties dedicate the bulk of their submissions to wrangling over whether section 2.5 is an arbitration clause. However, this Court need not decide whether section 2.5 is an arbitration clause enforceable by the FAA or N.Y. CPLR § 7503. Even if it is not an arbitration clause, it is enforceable under N.Y. CPLR § 7601, which provides:

A special proceeding may be commenced to specifically enforce an agreement ... that a question of valuation, appraisal or other issue or controversy be determined by a person named or to be selected. The court may enforce such an agreement, in which case the proceeding shall be conducted as if brought under article seventy.

While B & L argues that the Agreement never refers to the Expert Accountant Procedure as a "valuation" or "appraisal" (Mem. in Opp. at 14), the Agreement undeniably provides a procedure for a specific controversy to be determined by a third person. Similar types of agreements have been enforced under N.Y. CPLR § 7601. *See Questrom v. Federated Dep't Stores, Inc.*, 84 F.Supp.2d 483, 492 (S.D.N.Y.2000) (former CEO's agreement to have an investment banker determine valuation of company's equity was subject to the terms of N.Y. CPLR § 7601); *Cendant Corp. v. Forbes*, 70 F.Supp.2d 339, 342–343 (S.D.N.Y.1999) (parties' agreement to submit question of improperly reimbursed expenses to an audit committee enforced pursuant to N.Y. CPLR § 7601); *Penn Central Corp. v. Consol. Rail Corp.*, 56 N.Y.2d 120, 128–129, 451 N.Y.S.2d 62, 67–68, 436 N.E.2d 512 (1982) (independent panel's valuation of land and air rights resolving the entire controversy enforced pursuant to N.Y. CPLR § 7601); *Am. Silk Mills v. Meinhard–Commercial Corp.*, 35 A.D.2d 197, 201, 315 N.Y.S.2d 144, 148 (1st Dep't 1970) (contract provision to refer the valuation of inventory to an independent accountant enforced pursuant to N.Y. CPLR § 7601). The enforceability of the Expert Accountant Procedure is not impaired because it does not allow an adversarial process. *See Cendant Corp.*, 70 F.Supp.2d at 342–343 (agreement that audit committee would determine the propriety of reimbursed expenses removed the issue from arbitration and was enforceable pursuant to N.Y. CPLR § 7601) *American Silk*, 35 A.D.2d at 201, 315 N.Y.S.2d at 148 (agreement to allow third-party accountants to fix value of inventory enforced). Accordingly, this Court finds that section 2.5 of the Agreement is enforceable pursuant to N.Y. CPLR § 7601.

## CONCLUSION

Luxottica's motion to compel B & L to submit the disputes embodied in the objections to an independent accountant for determination pursuant to section 2.5(c) of the Agreement is granted. B & L's appli-

cation for additional discovery is denied. The Clerk is directed to close this case.

SO ORDERED.