■ CARGILL INCORPORATED, Respondent, v BUNGE FOODS, LTD., Appellant. [762 NYS2d 53] —Order and judgment (one paper), Supreme Court, New York County (Joan Madden, J.), entered December 27, 2001, which, in a proceeding pursuant to CPLR article 76 arising out of the sale by respondent-appellant Bunge Foods, Ltd. of the corporate stock of Grandes Molinos de Venezuela S.A. (Gramoven), insofar as appealed from as limited by the briefs, ruled in favor of the buyer, petitioner-respondent Cargill Incorporated, that the issue of Gramoven's prepurchase partial reversal, or reduction, of the "usage value provision"* could be submitted to the parties' designated accountant, Arthur Andersen & Co., even though it was not raised in Cargill's postpurchase financial statements, unanimously affirmed, without costs.

Cargill purchased Bunge's interest in Gramoven for $100 million, pursuant to a stock purchase agreement (the Agreement) dated November 4, 1998. Pursuant to section 2.04 of the Agreement, entitled "Post-Closing Audit and Adjustment," the purchase price was subject to a postclosing adjustment based on Gramoven's net worth as reflected in a "Closing Balance Sheet" to be prepared in accordance with Venezuelan generally accepted accounting principles, at Cargill's option and cost, within 120 days of the closing. In the event Gramoven's net worth was found to be less than $71 million, Bunge was required to reimburse Cargill for any shortfall in excess of $4 million. In the event Bunge rejected such Closing Balance Sheet and the parties could not resolve their "differences" within 30 days of such rejection, Arthur Andersen & Co., or another accountant mutually agreed to by the parties, acting as an expert, not as an arbitrator, was to resolve the "dispute," which determination was to be final.

Cargill retained KPMG to audit Gramoven's financial statements and, after a three-month audit, KPMG prepared a Closing Balance Sheet which valued Gramoven at $53,648,000. According to the terms of the Agreement, this resulted in a claimed shortfall by Cargill of $17,352,000, of which Bunge was responsible for reimbursing Cargill $13,352,000.

---

* A "usage value provision" is a deduction in the net worth of a company to account for the overstatement of the value of certain assets, i.e., property, plant and equipment.

On August 24, 1999, Bunge timely rejected Cargill's Closing Balance Sheet, although it did agree to certain adjustments. In its rejection memorandum, Bunge relied upon a 1997 report prepared by the American Appraisal Co. for Gramoven's management, which had partially reversed, or reduced, an $8,423,500 usage value provision by $2,279,273, resulting in a balance of $6,144,227. Bunge claimed that such usage value provision should be completely reversed or reduced, effectively increasing the net worth of Gramoven by that amount. In its response, dated February 10, 2000, Cargill challenged Bunge's request to reduce the shortfall by reversing the balance of the usage value provision and, for the first time, took the position that the 1997 partial reversal was not permitted under Venezuelan generally accepted accounting principles and sought to increase any shortfall by $2,279,273.

When the parties could not agree on a value for Gramoven, Bunge contended that Cargill could not submit the 1997 partial reversal issue to Arthur Andersen because it was not reflected in the Closing Balance Sheet prepared pursuant to section 2.04 (a) of the Agreement. Citing the Agreement's "no waiver" provision, Cargill countered that its request was a "dispute" within the meaning of section 2.04 (c). When Arthur Andersen declined to resolve the parties' disagreement over the scope of the appraisal, Cargill commenced this special proceeding pursuant to CPLR 7601, which provides for specific performance of an agreement, such as this, that a question of valuation, appraisal or other issue or controversy be determined by a person named or to be selected.

In the order appealed from, Supreme Court granted the petition and directed Bunge to submit to an appraisal before Arthur Andersen "of all unresolved issues concerning the valuation of the Net Worth of Gramoven as raised in the Closing Balance Sheet, Rejection Memorandum, and the Response, including the issue relating to the 1997 partial reversal of usage value provision."

Bunge now argues that the court erred when it found that section 2.04 of the Agreement could not be read to limit the scope of Arthur Andersen's review to issues raised in the Closing Balance Sheet. We disagree.

Nothing in section 2.04 restricts Cargill to a purely defensive position vis-à-vis Gramoven's valuation and, absent clear, specific terms to that effect, section 2.04 (c) cannot be read to so limit the "differences" and "dispute" language of that section (*see Matter of Westmoreland Coal Co. v Entech, Inc.*, 296 AD2d 317 [2002], *lv granted* 98 NY2d 616 [2002]). Section 2.04 (c)

simply calls for the submission of the parties' "dispute" in the event they are unable to resolve their "differences." We have considered Bunge's other arguments and find them unavailing. Concur—Tom, J.P., Andrias, Sullivan, Friedman and Marlow, JJ.