Matter of Decree-Crane Special Papers NA, LLC v WP Strategic Holdings, LLC (2025 NY Slip Op 50725(U))

[*1]

Matter of Decree-Crane Special Papers NA, LLC v WP Strategic Holdings, LLC

2025 NY Slip Op 50725(U)

Decided on April 16, 2025

Supreme Court, Albany County

Platkin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 16, 2025
Supreme Court, Albany County

In the Matter of the Application of 
 Decree-Crane Special Papers NA, LLC, Petitioner, To Enforce an Agreement for Determination of an Issue Pursuant to CPLR Article 76,

against
WP Strategic Holdings, LLC, Respondent.

Index No. 912660-24

Greenberg Traurig LLP
Attorneys for Petitioner
(Cynthia Neidl, of counsel)
54 State Street, 6th Floor
Albany, New York 12207
Wilson Elser Moskowitz Edelman & Dicker, LLP
Attorneys for Respondent
(Peter A. Lauricella, of counsel)
200 Great Oaks Boulevard, Suite 228
Albany, New York 12203

Richard M. Platkin, J.

This matter arises from the acquisition of Crane Special Papers North America, Inc. ("Crane") by petitioner Decree-Crane Special Papers NA, LLC ("Decree") from respondent WP Strategic Holdings, LLC ("WPS"). 
"Decree brings this special proceeding to enforce the [parties' merger agreement] [*2]pursuant to [CPLR] § 7601, and to appoint a nationally recognized certified public accounting firm pursuant to CPLR § 7504" for the purpose of "determin[ing] the adjustment to the purchase price" required by the agreement (NYSCEF Doc No. 1 ["Petition"], ¶¶ 1, 8). 
WPS opposes the Petition through an answer that also alleges counterclaims for breach of the merger agreement (see NYSCEF Doc No. 19 ["Answer"]). 
BACKGROUND
A. The Parties and the Merger Agreement
Crane is a manufacturer and seller of specialty paper products. It was acquired by WPS, a business consulting firm, in March 2024. 
Decree was formed later in 2024 for the purpose of acquiring Crane. Through a Merger Agreement that became effective on July 3, 2024 (see NYSCEF Doc No. 4 ["Merger Agreement"]), Decree acquired Crane.
Section 2 of the Merger Agreement calls for certain post-closing adjustments to the purchase price, including a Net Working Capital Adjustment and Cash Adjustment. These adjustments reflect the differences between the pre-closing estimates of Crane's net working capital ("Net Working Capital" or "NWC") and cash balances as of June 21, 2024 ("Measurement Date") and the actual balances as of such date.
To implement the adjustment process, Crane was obliged to deliver in advance of the closing (i) a balance sheet ("Estimated Effective Date Balance Sheet"), computed as of the Measurement Date, that includes an estimate of NWC ("Estimated Net Working Capital"), and (ii) a calculation of any cash adjustment ("Estimated Cash Adjustment Statement") (see Merger Agreement, § 2 [b] ["Section 2 (b)"]).
These estimates are reconciled against Crane's actual balances as of the Measurement Date (see id.). Within 75 days of the closing, Decree must deliver to WPS (i) a balance sheet for Crane ("Post-Closing Balance Sheet"), prepared as of the Measurement Date, in accordance with generally accepted accounting principles ("GAAP"), including a statement of NWC, and (ii) a calculation of the cash adjustment ("Post-Closing Cash Calculation") (see id.).
WPS has thirty (30) days from receipt of the Post-Closing Balance Sheet and Post-Closing Cash Calculation ("Review Period") to review Decree's calculations and deliver a written notice of disagreement setting forth in reasonable detail the basis for any disagreement, the specific items and amounts in dispute, and WPS's alternative calculations ("Dispute Notice") (see id.). To that end, Decree must provide "WPS and [its] representatives" with "reasonable access to all records and work papers necessary to compute and verify" the post-closing computations (id.), and the Review Period may be extended by WPS for each day that Decree "fails to provide WPS with access to records or work papers" (id.). 
Upon WPS's timely delivery of a proper Dispute Notice, the parties shall attempt to resolve the dispute through good-faith negotiations. If they fail to do so within thirty (30) days, the parties shall "promptly" refer the dispute to "a nationally recognized certified public accounting firm acceptable to [them]" ("Neutral Accountant") (id.). The Neutral Accountant shall determine the Net Working Capital Adjustment and Cash Adjustment, and the accountant's determination "shall be final, binding and conclusive" (id.). The parties shall share the fees and expenses of the Neutral Accountant "equally" (id.). 
B. The Parties' Dispute and Decree's Position
On July 2, 2024, WPS/Crane delivered to Decree an Estimated Effective Date Balance Sheet that resulted in a $179,910 upward adjustment ("Estimated Net Working Capital [*3]Adjustment") to the purchase price (see NYSCEF Doc No. 3 ["Buhler Aff."], ¶ 5)
On September 15, 2024, Decree delivered a Post-Closing Balance Sheet and Post-Closing Cash Calculation to WPS showing a shortfall in both NWC and the Cash Adjustment that would reduce the purchase price by about $575,000 (see id., ¶ 7). "In preparing the Post-Closing Balance Sheet, Decree relied on Estimated Effective Date Balance Sheet and other materials prepared by WPS/Crane, and did not create new records . . ." (id., ¶ 8). 
On September 25, 2024, WPS demanded financial records and information responsive to fifteen separate requests, but Decree asserted that "[c]ertain of the requests sought information that was not necessary to compute and verify the Post-Closing Balance Sheet and Post-Closing Cash Calculation, and were thus overly broad" (id., ¶ 10). "On September 26, 2024, Decree provided WPS with information demanded by WPS, as well as responses to each of WPS's fifteen separate requests," after which the parties participated in a call "to discuss WPS's demand for information" (id., ¶¶ 11-12). "Decree provided additional records to WPS on October 3, 12, and 13, 2024" (id., ¶ 13).
"On October 16, 2024, WPS delivered a Dispute Notice to Decree raising concerns regarding the calculation of inventory, accounts receivable balances, and invoices" (id., ¶ 14; see NYSCEF Doc No. 5 ["Dispute Notice"]). "On October 25, 2024, the parties participated in a call to attempt to resolve any differences" (Buhler Aff., ¶ 15). 
By letter dated November 5, 2024, WPS demanded that Decree provide information and records responsive to six additional requests within three business days (see id., ¶ 16; NYSCEF Doc No. 6). In its response of November 8, 2024, Decree indicated that all materials used to prepare the Net Working Capital Adjustment had been supplied to WPS, as were specific responses to WPS's inquires (see Buhler Aff., ¶ 17; NYSCEF Doc No. 7). Decree's letter further indicated that if the parties could not resolve their dispute by November 15, 2024, Decree would refer the matter to a Neutral Accountant (see id.). 
By email dated November 12, 2024, WPS's counsel reiterated the demand for additional records and stated that referral to a Neutral Accountant would be premature because WPS had not received all the information and documents it requested (see Buhler Aff., ¶ 18). Decree's counsel responded on the same day, reiterating that all records and work papers had been provided and proposing five nationally-recognized certified public accounting ("CPA") firms for selection as the Neutral Accountant: Grant Thornton; Baker Tilly; Crowe LLP; Moss Adams; and CohnReznick (see id., ¶ 19; NYSCEF Doc No. 8 at 12).
On November 18, 2024, Decree's counsel sent a follow-up email to WPS's counsel, stating that the dispute resolution period had closed on November 15, 2024 and suggesting Baker Tilly as the Neutral Accountant (see Buhler Aff., ¶ 21; NYSCEF Doc No. 8 at 11). 
The parties participated in a November 21, 2024 call, during which Decree's counsel offered to allow a representative of WPS to conduct an in-person review of certain documents requested by WPS (see Buhler Aff., ¶ 22). During another call on November 27, 2024, WPS agreed to submit the dispute to a Neutral Accountant (see id., ¶ 23). 
On December 3, 2024, under reservation of rights, WPS proposed four CPA firms: BST & Co.; UHY; Teal, Becker, & Chiaramonte, CPAs P.C.; and MMB+Co. (see NYSCEF Doc No. 8 at 2).
Decree rejected the firms proposed by WPS "because they are not nationally recognized [CPA] firms, as required by the Merger Agreement" (Buhler Aff., ¶ 25). Decree "requested that WPS select from the list of nationally recognized [CPA] firms proposed by Decree, but WPS has [*4]refused and has ceased responding to Decree" (id., ¶ 26; NYSCEF Doc No. 8 at 1).
Decree commenced this proceeding on December 30, 2024, seeking an order "appointing a nationally recognized [CPA] to determine the adjustment to the purchase price pursuant to [Section 2 (b)] and compelling WPS to comply with its contractual obligations" (Petition, ¶ 8). 
C. WPS's Position
WPS opposes the Petition through an Answer that also alleges counterclaims for breach of the Merger Agreement and for specific performance.
WPS recognizes that "[a] special proceeding may be commenced to specifically enforce an agreement that a question of valuation, appraisal or other issue or controversy be determined by a person named or to be selected" in the same manner as "an arbitration agreement" (CPLR 7601). However, WPS invokes the statutory language requiring the dismissal of such a proceeding "[w]here there is a defense which would require dismissal of an action for breach of the agreement" (id.). 
WPS argues that it was not provided "with reasonable access to all records and work papers necessary to compute and verify" the NWC adjustment (NYSCEF Doc No. 25 ["Opp Mem"] at 3; see also NYSCEF Doc Nos. 20-21). In this regard, Section 2 (b) allows WPS to extend the review period "for each day [Decree] fails to provide WPS with access to records or work papers" (Merger Agreement at 3). As such, WPS argues that the "Review Period" has yet to lapse, rendering this matter unripe (Opp Mem at 3). 
WPS further argues that Decree "has failed to . . . negotiate in good faith on the selection of the 'Neutral Accountant'. . . . Decree simply dismissed WPS' proposed list without even considering it, even though each and every firm on our list is a 'nationally recognized' CPA firm (for example, one of WPS' suggestions, UHY, has over 9500 employees with approximately 42 offices in the United States)" (id. at 4). 
ANALYSIS
Contractual mechanisms for resolving pricing and valuation disputes, "such as the one contained in Section 2 (b) . . . , have been recognized and enforced under New York law" (NYSCEF Doc No. 9 at 5-6; see e.g. Luxottica Group, S.p.A. v Bausch & Lomb Inc., 160 F Supp 2d 552, 556 [SD NY 2001] [collecting authorities]). In this regard, CPLR 7601 provides:
A special proceeding may be commenced to specifically enforce an agreement that a question of valuation, appraisal or other issue or controversy be determined by a person named or to be selected. The court may enforce such an agreement as if it were an arbitration agreement, in which case the proceeding shall be conducted as if brought under article seventy-five of this chapter. Where there is a defense which would require dismissal of an action for breach of the agreement, the proceeding shall be dismissed.
Much of the litigation under CPLR 7601 has centered on whether particular disputes implicate the purchase-price adjustment process, rather than breaches of warranties, representations and the like, which must be litigated in a plenary action (see Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352 [2003, Read, J.]). However, WPS does not contend that the issues raised by the Dispute Notice fall within the indemnity provisions of the Merger Agreement, and, in any event, those provisions explicitly carve out disputes to be resolved under Section 2 (b) (see Merger Agreement, § 7 [g]; see also Spectris Inc. v 1997 Milton B. Hollander Family Trust, 44 Misc 3d 1215[A], 2014 NY Slip Op 51131[U], *13-16 [Sup Ct, NY County 2014, Bransten, J.], affd 138 AD3d 626 [1st Dept 2016]). 
Nor does WPS dispute that: (i) the Merger Agreement requires any disagreements regarding the final price adjustment to be resolved by a nationally recognized CPA firm selected by the parties; (ii) the parties disputed the amount of the final price adjustment and, ultimately, agreed to refer the issue to a Neutral Accountant; (3) Decree proposed five accounting firms, all of which WPS rejected, and WPS proposed four firms, all of which Decree rejected; and (iv) a special proceeding under CPLR 7601 is a proper vehicle for seeking an appointment of a Neutral Accountant (see generally Cargill Inc. v Bunge Foods, 306 AD2d 101, 102 [1st Dept 2003]; Matter of American Silk Mills Corp. [Meinhard-Commercial Corp.], 35 AD2d 197, 201 [1st Dept 1970]). 
Nonetheless, WPS argues that the Petition is not "ripe" due to Decree's failure to supply it with "all" of the requested records and information, which is said to have extended the Review Period indefinitely. Under Section 2 (b), WPS may extend the Review Period after receipt of the Post-Closing Balance Sheet and Post-Closing Cash Calculation if Decree "fail[ed] to provide WPS with access to records or work papers" (Merger Agreement at 3). 
The Court is unconvinced by WPS's argument. Decree submits unrebutted proof that it promptly provided WPS with reasonable access to requested financial records and work papers (see Buhler Aff., ¶¶ 9-13, 17), and, after some back and forth, WPS served its Dispute Notice (NYSCEF Doc No. 5). Under Section 2 (b), service of that Dispute Notice operated to close the Review Period and oblige the parties "to attempt in good faith to resolve [their] dispute within thirty (30) days" and, if necessary, "promptly refer [the dispute] to a nationally recognized [CPA] firm acceptable to [Decree] and WPS" (Merger Agreement at 4). 
Contrary to WPS's contention, any lingering disagreement on its part concerning access to books and records did not operate to extend the Review Period following its timely service of a proper Dispute Notice, particularly after WPS agreed to submit the dispute to the Neutral Accountant. Section 2 (b) provides that the Review Period "may be extended" by WPS by one day for each day that Decree "fails to provide WPS with access to records or work papers" reasonably required for verification of the post-closing calculations and figures (id. at 3-4), but WPS's conduct amounted to a binding election to terminate the Review Period and move to the dispute resolution phase.
Under the plain language of Section 2 (b), a pricing dispute that cannot be resolved through good-faith negotiations must be referred to the Neutral Accountant for resolution, and each side shall "furnish to the Neutral Accountant such reasonable work papers and other documents and information relating to the calculation of the Net Working Capital as of the Measurement Date or the Cash Adjustment as that party desires or as the Neutral Accountant requests" (id. at 4). The focus therefore shifts from information needed by WPS to ascertain the existence of a dispute to the information needed by the Neutral Accountant to resolve the dispute, and the Neutral Accountant has the express power to ensure that all necessary documents and information are supplied.
Inasmuch as the parties failed to resolve their dispute within 30 days of WPS's service of the Dispute Notice and were unable to agree on a nationally recognized CPA firm, the Petition is ripe for adjudication.
WPS next argues that the Petition must be dismissed because Decree breached the Merger Agreement by failing to accept any of the accounting firms that it proposed. However, as properly observed by Decree, Section 2 (b) requires the Neutral Accountant to be "acceptable" to both parties (Merger Agreement at 4), and neither side was willing to accept a [*5]firm from the other side's list (see NYSCEF No. 20, ¶¶ 34-36; NYSCEF Doc No. 21, ¶¶ 18-21). Moreover, rather than participate in further negotiations or advance additional names, WPS simply stopped responding to Decree's inquiries, forcing the commencement of this proceeding (see NYSCEF Doc No. 8 at 1; Petition, ¶¶ 50-51; Buhler Aff., ¶¶ 26-27).[FN1]

WPS also pleads counterclaims for breaches of the Merger Agreement and/or the implied covenant of good faith and fair dealing predicated on the same grounds as those raised in opposition to the Petition, seeking damages and specific performance (see Answer, ¶¶ 97-121).
As a threshold matter, WPS's plenary counterclaims are not properly before the Court inasmuch as WPS failed to file and serve a summons (see CPLR 304 [a]; 306-b; Matter of New York Times Co. v City of NY Police Dept., 103 AD3d 405, 407 [1st Dept 2013], lv dismissed 21 NY3d 930 [2013], lv denied 22 NY3d 854 [2013]). In any event, the counterclaims are precluded by the plain terms of the Merger Agreement, and the damages WPS seeks are wholly conjectural at this point. Based on the foregoing, the Court concludes the Petition must be granted and a Neutral Accountant appointed (see Victor's Cafe 52nd St., Inc. v Travelers Indem. Co. of Am., 2023 WL 4865930, *1-2 [SD NY, July 31, 2023]). 
Finally, the Merger Agreement entitles the "'substantially prevailing'" party in this proceeding to recover "'all reasonable attorney fees and expenses'" (Opp Mem at 5, quoting Merger Agreement, § 13 [q]; see Petition, ¶¶ 27-28). The Court finds that Decree is a substantially prevailing party entitled to such fees and expenses.
CONCLUSION
Based on the foregoing,[FN2]
it is
ADJUDGED that the Petition is granted; and it is further
ORDERED that WPS's counterclaims are dismissed; and it is further
ORDERED that the parties shall confer as to choosing a Neutral Accountant from the following list: (i) The Bonadio Group, or (ii) Freed Maxick; and it is further
ORDERED that the parties shall notify the Court of their mutual selection (or inability to reach mutual agreement) within twenty (20) days; and it is further
ORDERED that if the parties are unwilling or unable to reach agreement, the Court will designate a firm and that selection will be final and binding, absent proof of a conflict of interest that would prevent the designated firm from serving; and it is further
ADJUDGED that Decree is entitled to reasonable counsel fees and costs; and finally it is
ORDERED that if the parties cannot reach agreement on the amount of Decree's [*6]reasonable counsel fees and costs, Decree shall move for an award of fees and costs within sixty (60) days.
This constitutes the Decision, Order & Judgment of the Court, the original of which is being uploaded to NYSCEF for entry by the Albany County Clerk. Upon such entry, counsel for petitioner shall promptly serve notice of entry on all other parties entitled thereto.
Dated: April 16, 2025
Albany, New York
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered: NYSCEF Doc Nos. 1-9, 19-29, 33-34.

Footnotes

Footnote 1:WPS suggests that Decree's mere refusal to agree to any of its candidates was a breach of the Merger Agreement and/or the implied covenant of good faith and fair dealing, and it therefore was under no obligation to negotiate further (see NYSCEF No. 20, ¶¶ 37-38; NYSCEF Doc No. 21, ¶¶ 21-22). But the implied covenant of good faith and fair dealing applies to all parties of the agreement (see 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 153 [2002]), and WPS refused to agree to any of the names on Decree's list.

Footnote 2:To the extent not expressly addressed, the parties' remaining arguments have been considered and found to be either without merit and/or unnecessary to entertain given the disposition reached herein.